Vere S. McKINNON, et al., Plaintiffs,

v.

James G. CAIRNS, et al., Defendants.

No. CIV–87–845–P.

United States District Court,
W.D. Oklahoma.

May 5, 1988.

John R. McCandless, Bryce A. Baggett, Barry L. Smith, Oklahoma City, Okl. for plaintiffs.

William J. Robinson, Reid E. Robison, James A. Kirk, Merrilyn L. Blackburn, James R. Waldo, Rob Robertson, Gary A. Bryant, Charles C. Green, Robert J. Turner, Joe S. Rolston, III, Jon H. Trudgeon, Jimanne H. Mays, Suzanne P. Heggy, Burck Bailey, Rebecca J. Sherwood, Warren F. Bickford, IV, John R. Morris, Charles E. Geister, III, George S. Corbyn, Jr., Scott M. Rhodes, Collier H. Pate, Gary A. Gingrich, Clyde A. Muchmore, Oklahoma City, Okl., Richard K. Holmes, Tulsa, Okl., Donald H. Bacon, Little Rock, Ark., John Douglas, Washington, D.C., for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

PHILLIPS, District Judge.

### I. BACKGROUND

This matter comes before the Court upon defendants' various Motions to Dismiss.[1]

Because there is a substantial overlap of contentions in these motions, the Court will address their merits by the issues presented rather than the individual motions. The primary bases for the motions are Rules 12(b)(1), 12(b)(6), 8, and 9(b) of the Federal Rules of Civil Procedure. For the reasons hereinafter set forth, the Motions to Dismiss plaintiffs' Amended Complaint are GRANTED in part and DENIED in part.

Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001 *et seq.;* 12 U.S.C. § 1819; § 2(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77v(a); § 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa; and pendent jurisdiction.

The allegations in this case revolve around three employee benefit plans: (1) The First Oklahoma Bancorporation and Participating Companies Employees' Savings and Thrift Plan ("Savings and Thrift Plan"); (2) The Pension Plan for Employees of First Oklahoma Bancorporation and Participating Companies dated January 1, 1979, which was purportedly terminated on July 31, 1984 ("First Pension Plan"); and (3) The Pension Plan for Employees of First Oklahoma Bancorporation, Inc., and Participating Companies dated August 1, 1984 ("Second Pension Plan"). [¶¶ 2(e), (f) and (g) ].[2] Plaintiffs allege they were employees of the failed First National Bank & Trust Company of Oklahoma City ("Bank"), the First Oklahoma Bancorporation, Inc. ("Bancorporation"), or their subsidiaries and were participants in and beneficiaries of the above mentioned plans. [¶ 1].

The Complaint names the Bancorporation, the Federal Deposit Insurance Corporation ("FDIC") as Receiver of the Bank, the Savings and Thrift Plan, the First and

---

1. Ten Motions to Dismiss on behalf of 54 of the 57 defendants are pending and have been renewed in light of plaintiffs' Amended Complaint, filed July 10, 1987.

2. References to paragraphs are to the Second Amended Complaint, filed July 10, 1987.

Second Pension Plans,[3] and fifty-seven (57) individuals as defendants. The individual defendants are grouped in the Complaint as directors of the Bank, directors of the Bancorporation, and fiduciaries of the Savings and Thrift Plan. [¶¶ 2(b) through (j)].

Generally, plaintiffs allege that for several years prior to the Bank's failure on July 14, 1986, the directors of the Bancorporation, the directors of the Bank and the fiduciaries of the Savings and Thrift Plan manipulated the Savings and Thrift Plan and the two Pension Plans for the benefit of the Bancorporation, its individual stockholders and the Bank, rather than for the benefit of the plaintiffs and other participants in the plans. [¶ 13].

More particularly, plaintiffs allege breach of fiduciary duties and violations of ERISA by improper termination of, and reversion of funds from, the First Pension Plan (Count I); violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count II); breach of fiduciary duties under ERISA by investment of the Plan's assets in employer securities (Count III); state law claim for breach of fiduciary duties by failure to pay premiums on plaintiffs' life, health and accident insurance policies and failure to give plaintiffs notice of their right to pay such premiums or obtain individual coverage after the date of the Bank's failure (Count IV); transactions prohibited by ERISA between the plans and parties in interest (Count V); breach of duties as successor trustee of the plans by the defendant FDIC (Count VI); and a request for injunctive relief prohibiting the FDIC from taking any action in terminating the plans (Count VII).

When a motion to dismiss is before the Court, under Rule 12(b)(6), the factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the complainant. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). A complaint should not be dismissed unless it appears

beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Further, the complaint should not be dismissed merely because plaintiffs' allegations do not support a stated legal theory, for the Court is obligated to determine whether the allegations support relief on any possible theory. *See Perington Wholesale, Inc., v. Burger King Corp.*, 631 F.2d 1369 (10th Cir.1980). Each of the bases for the motions to dismiss will be separately addressed below.

## II. SECURITIES CLAIMS

In Count II of the Amended Complaint, plaintiffs allege violations of Section 10(b) and Rule 10b-5, apparently against all defendants. The defendants challenge these claims on plaintiffs' lack of standing and failure to plead securities fraud with particularity.

Section 10(b) forbids the use of "any manipulative or deceptive device or contrivance." Rule 10b-5 makes it unlawful, in connection with the purchase or sale of a security:

(1) to employ any device, scheme or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

In order for a plaintiff to prevail against a primary violator of Section 10(b) and Rule 10b-5, it must show the following:

(1) That the conduct complained of occurred in connection with the purchase or sale of a security.

(2) That the violator made an untrue statement of a material fact which was

---

**3.** Although named as defendants, plaintiffs contend the plans should be realigned as plaintiffs.

*See infra* Section II.

necessary in order to make the statements which were made not misleading. (3) That the violator acted knowingly, with a motive embracing intent to deceive, manipulate, or defraud; or with recklessness such as would be considered an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the actor or so obvious that he must have been aware of it. (4) That plaintiff relied on such misrepresentation, and (5) That the plaintiff was damaged as a proximate result of such misrepresentation.

*Feldman v. Pioneer Petroleum, Inc.*, 606 F.Supp. 916 (W.D.Okla.1985) citing *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir.1975); *Stevens v. Vowell*, 343 F.2d 374 (10th Cir.1965).

Liability may also be established secondarily upon a showing that defendants aided and abetted the primary violator. To establish aider and abettor liability, the plaintiffs must show:

1. Fraud by the Primary violator;
2. Knowledge of the fraud by the aider and abettor; and
3. Substantial assistance by the aider and abettor.

*Feldman*, 606 F.Supp. at 925, citing *Hackbart v. Holmes*, 675 F.2d 1114 (10th Cir. 1982) (additional citations omitted).

The Tenth Circuit has held that the particularity requirement of Rule 9(b), Fed.R. Civ.P., is applicable generally to securities fraud cases. *Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1010 (10th Cir. 1986); *see also D & G. Enterprises v. Continental Illinois National Bank*, 574 F.Supp. 263, 266–68 (N.D.Ill.1983). Accordingly, this Court must evaluate plaintiffs' securities claims under the test of particularity announced in *Seattle–First National Bank v. Carlstedt*:

Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and how.

*Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986), quoting *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774–75 (D.Colo.1964).

This Court recognizes that it should not sustain a motion to dismiss a fraud claim unless necessary to protect the purposes underlying Rule 9(b)'s particularity requirement. *See, e.g., Massey–Ferguson, Inc. v. Bent Equipment Co.*, 283 F.2d 12, 15 (5th Cir.1960); *In Re Longhorn Securities Litigation*, 573 F.Supp. 255 (W.D.Okla.1983). However, as the Second Circuit has pointed out, "[a] complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one." *In Re Tesoro Petroleum*, 467 F.Supp. 227 (W.D. Tex.1979), citing *Segal v. Gordon*, 467 F.2d 602, 607–08 (2nd Cir.1972). The *Tesoro* court further stated that a plaintiff in a non–9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it. *Id.* at 250; Rule 11, Fed.R.Civ. P. In short, while all factual allegations of the complaint must be taken as true and all doubt resolved in favor of the complainant, neither the Court nor the defendants are required to blindly accept conclusory allegations of fraud, tracking statutory language, without corresponding factual allegations. *See Ryan v. Scoggin*, 245 F.2d 54 (10th Cir.1957).

Plaintiffs allege that the shares and securities of defendant Bancorporation were sold to the Savings and Thrift Plan under financial statements of the Bank and Bancorporation which were materially false and misleading and omitted to state material facts without which they were false and misleading. Such financial statements allegedly "understated the reserve for loan losses, loan losses and overstated income." [¶ 15]. Plaintiffs allege that they elected to direct the investment of their individual accounts in the securities of Bancorporation based upon the false and misleading financial statements. Further, plaintiffs allege the defendants knew or should have known of these facts and the Savings and Thrift Plan should have brought this action for the benefit of the plaintiffs.[4] Finally, the plaintiffs allege they did not discover these "facts" until after July 1, 1986. [¶¶ 15 and 17].

Even if this Court were to adopt the most liberal philosophy on Rule 9(b), these allegations would not survive. Plaintiffs do not individually allege which particular defendants they (or the plans) dealt with; any time period or dates; any specific financial statements that were false or misleading; or whether the defendants are alleged to be primarily or secondarily liable. Plaintiffs must designate what affirmative misrepresentations or half-truths were directed to them by specific alleged sellers, the occasions on which such misrepresentations and half-truths were directed to them and how the putative seller's conduct contributed in bringing about the sale. In addition, if any defendants are alleged to be secondarily liable, the circumstances constituting such liability must be pleaded. Unfortunately, however, these are not the only problems with plaintiffs' securities claims.

Defendants also contend that Count II should be dismissed because plaintiffs have failed to allege they were purchasers, as required by *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed. 2d 539 (1975). Plaintiffs respond by stating that the requested realignment of the Savings and Thrift Plan will solve this deficiency because the Plan was clearly a purchaser. Brief in Response to Motions to Dismiss, filed September 18, 1987 at 17. From a reading of plaintiffs' response, it appears that plaintiffs are not attempting to state a 10(b) cause of action on behalf of the individual plaintiffs, but only on behalf of the Savings and Thrift Plan. *Id.* This fact makes plaintiffs' allegations of *individual* elections and reliance even more puzzling. In any event, plaintiffs' allegations in Count II fall well short of the particularity required by this Circuit for allegations of securities fraud.[5] This Court adopts the following comments as being equally applicable to the instant allegations:

> The most thorough review of this complaint shows that no allegations of fact have been made. There is no discrimination between or among defendants: all are equally culpable; all are aiders and abetters; all are co-conspirators; virtually all are controlling parties of all other defendants ... this court will not allow this case to proceed on these allegations.

*McFarland v. Memorex Corp.*, 493 F.Supp. 631, 656–57 (N.D.Cal.1980); *see also Farlow v. Peat Marwick Mitchell*, 666 F.Supp. 1500 (W.D.Okla.1987).

Accordingly, defendants' Motions to Dismiss Count II of the Amended Complaint are hereby GRANTED.

## III. STANDING ISSUES

Defendants contend that plaintiffs lack standing to invoke ERISA because

---

**4.** The Amended Complaint contains allegations that the Plans have been "joined herein as defendant[s] because [their] fiduciaries have failed to act on [their] behalf in pursuing claims against the other defendants named herein, but [they] should be realigned as plaintiff[s] against the other defendants in the claims for the benefit of [their] participants." [¶¶ 2(e), (f) and (g) ].

**5.** In light of the Court's finding relating to the Rule 9(b) deficiencies of Count II, the Court need not decide at this time whether the Savings and Thrift Plan (or the other plans) should be realigned as plaintiffs. However, should plaintiffs decide they can cure the 9(b) deficiencies by amendment to the Complaint, they should provide the Court with authority for realignment since standing under *Blue Chips* is critical to the viability, if any, of this cause of action.

they have failed to establish their individual status as participants under 29 U.S.C. § 1002(7) and, therefore, plaintiffs have failed to confer jurisdiction on the Court in Count I. Plaintiffs respond by stating that they "were" participants in and beneficiaries of the Savings and Thrift Plan and the two Pension Plans; they are not current employees of the Bank, Bancorporation or its subsidiaries. Plaintiffs further state they were participants in and beneficiaries of the plans on July 14, 1986, the date the Bank failed. Since that time, plaintiffs contend, the FDIC has exerted total control over the three plans making it impossible for the individual plaintiffs to determine their current status.

A civil action under ERISA may be brought under ERISA by a *participant* or beneficiary to recover benefits under the plan, to enforce his rights under the plan, or to clarify his future rights under the plan. 29 U.S.C. § 1132(a)(1)(B) (emphasis added). ERISA § 3(7), 29 U.S.C. § 1002(7) defines a participant as:

> any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan.

*See Saladino v. I.L.G.W.U. Nat. Retirement Fund*, 754 F.2d 473 (2d Cir.1985) (thorough analysis of the use of the term "participant" throughout ERISA). "This excludes retirees who have accepted the payment of everything owed to them in a lump sum, because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments." *Joseph v. New Orleans Electrical Pension and Retirement Plan*, 754 F.2d 628, 630 (5th Cir. 1985). The *Saladino* court stated the rationale behind the "participant" requirement:

> Expansion of the group to former employees of many years past or others with no *colorable* claim to benefits would

create uncertainties as to statutory obligations and impose great costs on pension plans for no legislative purpose.

*Saladino*, 754 F.2d at 477 (emphasis added).

Defendants complain that plaintiffs have failed to allege which plaintiffs were participants in which plan and whether any of the plaintiffs are, or will become, eligible to receive benefits from the plans. Defendants contend that inherent in plaintiffs' allegations that they "were" participants is the implication they are no longer participants and are not eligible to receive any benefits.

"[Q]uestions of standing must be resolved on the facts existing when the challenge is raised." *Yancy v. American Petrofina, Inc.*, 768 F.2d 707, 708 (5th Cir. 1985), citing *Safir v. Dole*, 718 F.2d 475, 481 (D.C.Cir.1983) (additional citations omitted). Included within the class of "participants" under ERISA are those with "colorable" claims to eligibility. *Saladino*, 754 F.2d at 477. In light of the facts as currently alleged, the Court finds that plaintiffs' eligibility is colorable *at this stage* of the proceedings and cannot hold, without doubt, that plaintiffs can prove no set of facts showing their standing under ERISA. *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–02. Moreover, the Court's decision is influenced by the fact that this lawsuit is a potential class action and the facts relating to plaintiffs' standing may be within the control of the defendants.[6]

Accordingly, defendants' Motions to Dismiss plaintiffs' ERISA claims for lack of standing are hereby DENIED.

## IV. PREEMPTION ISSUES

 Defendants contend that any and all of plaintiffs' claims under state and common law are preempted by ERISA, 29 U.S.C. § 1144(a). Defendants claim that Counts IV, VI and VII of the Amended

---

**6.** However, should plaintiffs fail to show, after adequate discovery related to standing, that they are not participants or beneficiaries of the plans as defined *infra*, or if plaintiffs have already received benefit payments under the plans, the Court will dismiss their ERISA claims for lack of standing. *See also Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986).

Complaint appear to state causes of action under state or common law, although those counts are devoid of the legal bases upon which they rely. Possible causes of action in the Amended Complaint appear to be tortious interference with contract, breach of contract, and violations of state insurance laws.

Plaintiffs, although evasive as to their exact causes of action, respond that: (1) the preemptive section of ERISA, 29 U.S.C. § 1144, exempts state laws regulating insurance; (2) Oklahoma law related to their insurance claims under Count IV is 36 O.S. §§ 4104 and 4502.1; (3) only state laws relating to "plans" are preempted; and (4) plaintiffs are entitled to proceed under other unspecified state laws which relate to "benefits" rather than "plans". Plaintiffs' Brief in Opposition to FDIC's Motion to Dismiss, filed September 18, 1987 at pp. 3–8.

When enacting ERISA, Congress intended to establish a comprehensive remedial scheme to resolve problems in private employee benefit plans and to provide security, stability and uniformity in this area. 29 U.S.C. §§ 1001(a)–(b). To ensure this goal, ERISA provides that it "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

ERISA, however, exempts from preemption state laws which regulate insurance, banking or securities. 29 U.S.C. § 1144(b)(2)(A).

> To summarize the pure mechanics of the provisions quoted above: if a state law "relate[s] to ... employee benefit plan[s]," it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that "regulat[e] insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

"The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* 107 S.Ct. at 1556.

It is clear that, if plaintiffs are indeed attempting to plead state or common law tort or contract claims, they are pre-empted by ERISA. *See Pilot Life,* 107 S.Ct. at 1549 (common law contract and tort claims for improper processing of claim for benefits under ERISA plan pre-empted); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (common law contract and tort claims related to employee benefit plan pre-empted); *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (state laws related to employee benefit *plan* pre-empted); *Jackson v. Martin Marietta Corp.,* 805 F.2d 1498 (11th Cir. 1986) (breach of contract claim for improper calculation of pension plan benefits pre-empted); *see also Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143, 1144 (D.D.C.1986).

Plaintiffs contend in Count IV that Bancorporation and the Bank refused to pay the premiums for policies of life, health and accident insurance for the benefit of plaintiffs. Plaintiffs further allege that these defendants failed to fulfill their duty to give notice to the plaintiffs and others to pay their individual premiums so they could continue such insurance on an individual basis. [¶ 21]. Plaintiffs contend these acts and omissions are actionable under 29 U.S.C. § 1132 and 36 O.S. §§ 4104 and 4502.1.[7]

Initially, plaintiffs' reliance on 36 O.S. § 4502.1 is misplaced as that statute applies only to the conversion privilege for group health insurance for a covered spouse. Plaintiffs' claim under Section 4104 also appears questionable, at least as to certain defendants. However, from the allegations of Count IV, the Court cannot

---

**7.** Plaintiffs apparently have named the Bank, Bancorporation and the FDIC as defendants under Count IV. *See infra* Section IX.

say that plaintiffs can prove no set of facts which would entitle them to relief.

Accordingly, subject to the requirements of Section IX, *infra,* defendants' Motions to Dismiss, based on pre-emption, are hereby DENIED to the extent that plaintiffs' state or common law claims are based upon the regulation of insurance; the motions are otherwise GRANTED.

## V. DEFENDANTS AS FIDUCIARIES

■ Plaintiffs allege breaches of ERISA fiduciary duties under Counts I, III, IV and VI of the Amended Complaint. The majority of the defendants have challenged the sufficiency of plaintiffs' allegations as to their individual status as fiduciaries.

ERISA was designed to "protect ... the interests of participants in employee benefit plans and their beneficiaries, ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). 29 U.S.C. § 1104 provides, *inter alia,* that fiduciaries must act solely in the interest of the participants and beneficiaries, perform according to the "prudent man" standard, and diversify the investments of the plan so as to minimize the risk of large losses. "The above provisions embody a carefully tailored law of trusts, including the familiar requirements of undivided loyalty to beneficiaries...." *Eaves v. Penn,* 587 F.2d 453, 457 (10th Cir.1978).

■ A fiduciary under ERISA is defined as a person, who with respect to the plan, exercises any discretionary authority or control over management of such plan or disposition of the assets, renders investment advice for a fee or other compensation with respect to any money or property of such plan, or has any discretionary authority or responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A); *McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 983 (N.D.Ala.1986).

The Tenth Circuit's adoption of a very broad definition of ERISA fiduciaries bears repeating:

... The term [fiduciary] includes anyone who exercises discretion in the management of assets, renders investment advice for a fee, or possesses discretionary authority with regard to plan administration. The broadness of the definition is readily apparent. Plan officers, directors, and members of the investment or administrative committee are certainly fiduciaries since they exercise discretionary authority or control over plan management and set disposition. *Similarly, officers and directors of the plan sponsor are fiduciaries if they exercise control through the selection of the investment committee, administrative committee, or plan officers or directors.* Because the definition includes those who render investment advice for a fee, the following persons may be considered fiduciaries: ... attorneys who counsel the employer, investment committee, or trustee with regard to an appropriate portfolio mix or with regard to specific investments, and receive a fee for these services; ... [*and*] ... stock brokers or dealers who recommend certain securities and then participate in the acquisition or disposition of those securities and receive a commission for other services.

*Eaves v. Penn,* 587 F.2d 453, 458 (10th Cir.1978) (emphasis added), quoting Little and Thrailkill, *Fiduciaries under ERISA: A Narrow Path to Tread,* 30 Vanderbilt L.Rev. 1, 4–5 (1977).

The individual directors of the Bank and the Bancorporation are alleged to be ERISA fiduciaries by virtue of their positions. While plaintiffs do not allege any discretionary authority or responsibility of these defendants in the administration of the plans, this allegation can be inferred from the Complaint. The question whether all or any of these defendants exercised such control sufficient to establish them as ERISA fiduciaries is a factual one, and will be borne out through evidence, or the lack thereof, presented following discovery.

The alleged fiduciary status of the FDIC is predicated upon its appointment as receiver of the assets of the Bank and its

subsidiaries, and as trustee of the Plans, on July 14, 1986. [¶¶ 2(e) and 23–27]. Although not pleaded in the Amended Complaint, plaintiffs base their allegations of the FDIC's fiduciary status on an Order Confirming Appointment of Successor Trustee and Transfer of Fiduciary Accounts, entered on August 29, 1986, by the District Court of Oklahoma County, styled as: *In the Matter of the Liquidation of the First National Bank and Trust Company of Oklahoma City, Oklahoma,* Case No. CJ–86–6785. Plaintiffs' Brief in Opposition to FDIC's Motion to Dismiss, filed September 18, 1987 at pp. 8–10. As with the individual defendants, and in light of the state court proceedings, the Court cannot find that plaintiffs can prove no set of facts establishing the FDIC's fiduciary status with respect to the plans.

Accordingly, defendants' Motions to Dismiss, based upon failure to sufficiently allege their respective individual fiduciary status, are hereby DENIED.

### VI. COUNT V OF THE COMPLAINT

Count V of the Amended Complaint reads as follows:

24. The defendants, and each of them, engaged in transactions on behalf of the plans which are prohibited by law, 29 U.S.C. § 1106, in a manner not known to the plaintiffs and those similarly situated at this time but which include

(a) the sale, exchange or leasing of property between the Plans and parties in interest;

(b) the lending of money or other extensions of credit between the Plans and parties in interest;

(c) the furnishing of goods, services and facilities between the Plans and parties in interest;

(d) the transfer to or use by or for the benefit of parties in interest and assets of the Plans; or

(e) acquisition, on behalf of the Plans, in violation of 29 U.S.C. § 1107(a).

██ Defendants contend this language is in violation of Rule 11, Fed.R.Civ.P., which states in pertinent part that "[t]he signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ...". Plaintiffs respond by stating they believe Count V to be an honest, candid statement of fact when little or no discovery has occurred.

If Count V was the only claim in this lawsuit, the Court would impose sanctions pursuant to Rule 11. However, while the Court does not condone such cavalier pleading of serious allegations, given the totality of the allegations unchallenged under Rule 11 at this stage and the small amount of space devoted to this issue in the parties' briefs, the Court will not impose monetary sanctions.

Accordingly, defendants' Motions to Dismiss Count V of the Amended Complaint are hereby GRANTED without prejudice.

### VII. TERMINATION AND REVERSION

██ Plaintiffs allege, in Count I of the Amended Complaint, that on or about July 31, 1984, Bancorporation, the Bank and their respective directors, terminated the First Pension Plan and withdrew therefrom approximately $14,098,000. Plaintiffs allege this was done without using accurate and correct current actuarial values for the benefits vested in the participants.

Plaintiffs, based upon *District 65, United Auto Workers v. Harper & Row Pub., Inc,* 576 F.Supp. 1468 (S.D.N.Y.1983), and similar authority, have conceded that a decision to terminate an employee benefit plan is not governed by the fiduciary provisions of ERISA. However, seizing upon language from the *Harper and Row* decisions relating to the amount of surplus reverted, they are seeking recovery for improper calculations of the amount reverted.

Defendants cite considerable authority from other circuits for the proposition that decisions to terminate plans are in no way ruled by ERISA's fiduciary standards, due to the voluntary nature of pension plans. *Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1416–17 (2d Cir.1985);

*C.F. Viggiano v. Shenango China Division,* 750 F.2d 276, 279 (3rd Cir.1984); *Champ v. American Public Health Association,* 8 E.B.C. 2217 (D.D.C.1987) [available on WESTLAW, 1987 WL 13959]; *Harper and Row, supra.* However, plaintiffs urge that if faulty and incorrect actuarial values were used with the knowledge of the fiduciaries, ERISA's self dealing provisions [29 U.S.C. § 1106(b)] apply to the termination, as well as the "solely in the interest" and "prudence" tests of 29 U.S.C. § 1104(a)(1)(A) and (B), citing *Eaves v. Penn* in support thereof.

After a careful and thorough reading, this Court does not believe the *Eaves v. Penn* case stands for the proposition asserted by plaintiffs; i.e., that plan termination decisions, under these circumstances, are subject to the "solely in the interest" and "prudence" requirements of ERISA. *See also Chait v. Bernstein,* 645 F.Supp. 1092 (D.N.I.1986).

The reasoning of *Eaves v. Penn* and *Harper and Row* does, however, convince the Court that plaintiffs have stated a claim for improper calculations of the reversion of surplus assets, following termination of the First Pension Plan, sufficient to withstand a motion to dismiss.

Accordingly, subject to the qualifications regarding the actual termination and reversion decisions discussed above, defendants' Motions to Dismiss Count I of the Amended Complaint are hereby DENIED.

## VIII. COUNT II OF THE COMPLAINT

█ Plaintiffs allege in Count III that defendants violated their fiduciary duties by causing the Plans to invest their funds in employer securities of Bancorporation when they knew, or should have known, that such investments were not in the best interests of the Plans. [¶¶ 18–20].

Defendants contend the Savings and Thrift Plan is an "eligible individual account plan," 29 U.S.C. § 1107(d)(3), that invested in "qualifying employer securities," 29 U.S.C. § 1107(d)(5), when such plan allegedly purchased the securities. Plaintiffs do not dispute this contention. In addition, both sides agree that the Savings and Thrift Plan is exempt from ERISA's "prohibited transaction" and "percentage limitation" provisions, 29 U.S.C. § 1106 and § 1107(a). Plaintiffs contend that (1) neither of the Pension Plans are exempt from the prohibited transaction, percentage limitations, diversification or prudence requirements of ERISA, and (2) under *Eaves v. Penn,* the Savings and Thrift Plan, although an eligible individual account plan, is still subject to the "solely in the interest" and "prudence" tests of §§ 1104(a)(1)(A) and (B).

Although defendants contend that Count III contains no allegations regarding the Pension Plans, "Plans" is used plurally throughout Count III. In addition, the Tenth Circuit has stated:

While an ESOP fiduciary may be released from certain *per se* violations on investments in employer securities under the provisions of § 406 and 407 of ERISA, the structure of the Act itself requires that in making an investment decision of whether or not a plaintiff's assets should be invested in employer securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the "solely in the interest" and "prudence" tests of §§ 404(a)(1)(A) and (B).

*Eaves v. Penn,* 587 F.2d at 459. Accordingly, plaintiffs have clearly stated a claim for relief under Count III and defendants' Motions to Dismiss Count III are hereby DENIED.[8]

## IX. ADDITIONAL RULINGS

Certain defendants have moved for dismissal of portions of the Amended Complaint pursuant to Rule 8, Fed.R.Civ.P. As any possible Rule 8 concerns have been addressed under other grounds for dismissal, those motions are hereby DENIED.

Certain defendants have moved for their dismissal from sections of the Complaint not applicable to them due to the timing of

---

**8.** The Court observes, however, that plaintiffs have a substantial burden in proving an ERISA fiduciary's actions in administering a plan were

"arbitrary and capricious." *Foltz v. U.S. News & World Report, Inc.,* 627 F.Supp. 1143 (D.D.C. 1986).

their involvement in the facts making up this lawsuit. Plaintiffs have conceded these contentions and they will be incorporated into plaintiffs' Second Amended Complaint.

Defendant FDIC contends that it should be dismissed pursuant to Rule 5, Fed.R. Civ.P., for insufficient service of process. For the same reasons the FDIC's Rule 12(b)(6) motion was denied, *see infra* Section V, this motion is DENIED.

Defendant Stephen Fussell has filed a Motion for Summary Judgment as well as a Motion to Dismiss. Fussell's Motion for Summary Judgment is hereby DENIED as premature, without prejudice to his urging of the motion following adequate discovery.

Defendants have moved alternatively for a more definite statement pursuant to Rule 12(e), Fed.R.Civ.P. These motions are GRANTED as follows: Plaintiffs, within twenty (20) days from the date of this Order, shall file a Second Amended Complaint including: (1) the specific defendants sought to be charged by each individual Count, and (2) the specific legal basis or bases for each Count. In addition, if they are able and choose to do so, plaintiffs shall file an amended Count II in compliance with Section II of this Order within the same twenty days.

## X. CONCLUSION

For the above stated reasons, it is hereby ORDERED that:

1. Count II of the Amended Complaint is hereby DISMISSED. Plaintiffs are granted leave to amend, if they can do so, within twenty (20) days from the date of this Order;

2. Defendants' Motions to Dismiss plaintiffs' ERISA claims for lack of standing are hereby DENIED;

3. Defendants' Motions to Dismiss based on pre-emption, are hereby DENIED to the extent that plaintiffs' state or common law claims are based upon the regulation of insurance; the motions are otherwise GRANTED;

4. Defendants' Motions to Dismiss, based upon failure to sufficiently allege their fiduciary status, are hereby DENIED;

5. Defendants' Motions to Dismiss Count V of the Amended Complaint are hereby GRANTED without prejudice;

6. Defendants' Motions to Dismiss Count I of the Amended Complaint are DENIED, subject to the qualifications in Section VII, *infra;*

7. Defendants' Motions to Dismiss Count III of the Amended Complaint are hereby DENIED;

8. Defendants' Motions to Dismiss, pursuant to Rule 8, are hereby DENIED;

9. Defendant FDIC's Motion to Dismiss for insufficient service of process is hereby DENIED.

10. Defendant Stephen Fussell's Motion for Summary Judgment is hereby DENIED as premature;

11. Defendants' Motion for More Definite Statement is GRANTED, as more fully set out in Section IX, *infra;*

12. A Scheduling Order for the future progress of this litigation is attached hereto as an appendix.

## APPENDIX: ORDER REGARDING STATUS/SCHEDULING CONFERENCE

The following deadlines are hereby set by the Court:

1. Motions to join additional parties or to amend pleadings shall be filed by August 30, 1988.

2. The discovery cutoff date in this matter is January 30, 1989. Plaintiff's final contentions are to be filed with the Court by February 13, 1989. Defendant's final contentions are to be filed with the Court within ten (10) days thereafter.

3. By January 2, 1989, the plaintiff shall submit to the defendant its final list of witnesses in chief, together with addresses and a brief summary of expected testimony where the witness has not already been deposed.

4. By January 9, 1989, the defendant shall submit to the plaintiff its final list of

witnesses in chief, together with addresses and a brief summary of expected testimony where the witness has not already been deposed.

5. The exchange of witnesses required by paragraphs 3 and 4 shall be by letter, with a copy of said letter to be submitted to the Clerk of this Court for filing. Except by leave of Court *and* exceptional circumstances shown, no witness shall be permitted to testify in chief for any party unless such witness's name was listed in the letter of transmittal.

6. With regard to expert witnesses, the identity and area of expertise must be made known; and the expert's curriculum vitae must be filed with the Clerk of the Court as part of the letter of transmittal referenced in paragraph 5. The curriculum vitae filed with the Clerk shall be in written form suitable for introduction into evidence as an exhibit at trial. Moreover, the expert must be made available for deposition examination during the discovery period unless waived, *in writing,* by opposing counsel. The deposition(s) of the expert(s) shall be taken in sufficient time to allow the testimony to be concluded within the discovery period. Additionally, at least two (2) days prior to the scheduled deposition of the expert, the party who is sponsoring the expert as its witness will provide opposing counsel with (1) an identification and description of the specific areas or fields in which the witness will be tendered as an expert, and (2) a *separate* listing and brief summary of *each* opinion to be rendered by the expert during the expert's direct examination at trial. Upon failure to accomplish the above, the expert will not be permitted to testify absent exceptional circumstances. If an expert's deposition testimony is to be offered in video form at trial, no more than five (5) minutes of the presentation of the direct examination will be devoted to the issue of the expert's qualifications.

7. By January 16, 1989, the plaintiff shall provide defendant its final exhibit list, containing the proposed number and a brief description of each exhibit which is intended to be offered. The list shall be in conformity with the format set forth in Appendix III of the Local Rules. By January 23, 1989, the defendant shall provide plaintiff its final exhibit list in the same fashion. Absent compelling reasons, exhibits which have not been provided pursuant to this paragraph will not be received at trial. All exhibits which are the subject of the above referenced exhibit lists and which are intended to be offered into evidence shall be premarked and reviewed by the parties at least ten (10) days prior to the commencement of the trial. The Clerk will supply gummed labels for this. No trial time will be used for the marking of exhibits.

8. All dispositive motions shall be filed by the parties by February 13, 1989. Responses to said motions will be filed by February 27, 1989, and the replies to said responses, if permitted by the Court upon application, shall be filed by March 6, 1989.

9. If there are pending dispositive motions or other motions, a supplemental Status Conference for hearing on these motions shall be held on March 27, 1989. If such a hearing is necessary, you will be affirmatively notified of the time and purpose of the hearing by the Clerk's Office, which will publish a docket reflecting the same. Absent such notification, the status conference will not be held. Unless waived by the Court, a joint status conference report in compliance with Local Rule 17(b), and in conformity with the format set forth in Appendix IV to the Local Rules of this district, shall be filed with the Court at least one week prior to the supplemental Status Conference.

10. Plaintiff's counsel is directed to initiate settlement discussions with the defendant on or before February 13, 1989 and report status of such discussions to the Court no later than March 13, 1989. A Settlement Conference in this matter shall be held before a United States Magistrate at a date prior to April 1, 1989, said date to be set by the Magistrate after coordination with the parties and the Clerk's Office.

11. The trial date for this matter shall be set for the April 13, 1989 trial docket. The case will be tried to (a jury, the Court). A jury demand has been made by plaintiffs.

12. On April 6, 1989, one week prior to the trial of this matter, the parties shall file suggested voir dire, requested jury instructions, motions in limine, and, if desired, trial briefs. Any objections (optional) to the above trial referenced submissions shall be filed five (5) days thereafter. In non-jury matters, proposed findings of fact and conclusions of law are to be submitted no later than April 6, 1989.

13. By April 6, 1989, a final pretrial order approved by all counsel in conformity with Local Rule 17(b) and the format set forth in Appendix IV of the Local Rules of this district, shall be submitted to the Court. The parties in particular are directed to page iii of Appendix IV with regard to the specification of all objections to proposed exhibits, with said specifications containing the evidentiary rule or rules relied upon. Exhibits which are not objected to in the final pretrial order shall be deemed admitted at trial without the necessity of a further evidentiary foundation or hearing.

14. The Court also advised counsel that it will not favor motions to alter the schedule set forth above, with the exception of proposed schedule changes which (1) are agreed upon by the parties, *and* (2) which will not alter the trial date or dispositive motion deadline date. Any motion to alter the schedule set forth in this order which does not meet both of the requirements set forth in this paragraph must be accompanied by a strong showing setting forth in detail the compelling circumstances justifying the proposed schedule changes.

The parties were also advised that motions which are not responded to within the specified period of time "shall be deemed confessed." See Local Rule 14(A) of the Western District of Oklahoma. Failure to comply with the deadlines set forth in this order will also result in the imposition of sanctions. *See* Rules 11, 16(f) and 37 of the Federal Rules of Civil Procedure.

15. *Class Certification Issues:* The following deadlines are established by the Court, with the agreement of the parties, for the discovery, preparation and presentation of issues regarding certification of a class of plaintiffs. By August 1, 1988, plaintiffs are to file a Motion to Certify a Class and supporting Brief. Defendants are to file Answer Briefs by September 2, 1988. Plaintiffs, if they choose to do so, are to file a Reply Brief by September 16, 1988.

ENTERED THIS 5th DAY OF MAY, 1988.