983 F.2d 1528
 61 USLW 2474, 16 Employee Benefits Cas. 1321
 Frederic J. RAYMOND, J.A. Morrison, Robert G. Jacobsen,
Donald F. Hill, George H. Liveris, Robert A. Irwin, A.D.
Bond, Virginia Howard, Ira S. Reavis, and Billy Rhea
Sargent, for themselves and on behalf of others similarly
situated, and others as opt in or consent plaintiffs
pursuant to applicable federal law, Plaintiffs-Appellees,
v.
MOBIL OIL CORPORATION, Defendant-Appellant.
 No. 92-1298.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 20, 1993.
 
 Rodney R. Patula (Elizabeth C. Moran, Gary J. Benson, and Ricardo M. Barrera, with him on the briefs), Pryor, Carney & Johnson, Englewood, CO, for plaintiffs-appellees.
 Michael E. Tigar, Austin, TX (Loren Kieve and John G. Koeltl, Debevoise & Plimpton, New York City, Harold A. Haddon and Saskia A. Jordan, Haddon, Morgan & Foreman, P.C., Denver, CO, with him on the briefs), for defendant-appellant.
 Before LOGAN, ANDERSON, and BALDOCK, Circuit Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 In this class action involving the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, defendant/appellant Mobil Oil Corporation appeals under 28 U.S.C. § 1292(b) from an interlocutory order of the district court denying Mobil's motion for summary judgment on certain claims of plaintiffs, former employees of Mobil.[1] Plaintiffs' action arose out of the same pension plan amendment involved in a previous decision of this court, Mitchell v. Mobil Oil Corp., 896 F.2d 463 (10th Cir.), cert. denied, 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990), as well as a recent decision of the Fifth Circuit, Christopher v. Mobil Oil Corp., 950 F.2d 1209 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). Because we conclude that plaintiffs are not "participants" in an ERISA plan, and therefore lack standing to sue under ERISA, we reverse the district court's denial of Mobil's motion for summary judgment and remand for entry of summary judgment in favor of Mobil.
 
 BACKGROUND
 
 2
 The essential undisputed facts relevant to this appeal are set forth in the Mitchell and Christopher opinions. We quote at some length from each:
 
 
 3
 Until 1977, Mobil provided retirement benefits only in the form of an annuity. In 1977, Mobil added a "lump-sum option" to its retirement plan, the terms of which, for the purposes of this case, appear in the Retirement Plan of Mobil Oil Corporation as of January 1, 1984 (the Plan). Under the Plan, an employee could elect to receive a lump-sum payment which had the same equivalent actuarial value, discounted at 5%, as the annuity. In the case of early retirement, the Plan reduced the lump-sum payment by 5% for each year of retirement prior to the age of sixty. To qualify for the lump-sum option, an employee had to elect this option prior to retirement; had to be over fifty-five; and, at the date of his retirement, had to have a net worth of at least $250,000 or an accumulated lump sum in excess of $250,000.
 
 
 4
 In February 1984, Mobil amended the lump-sum option. It raised the discount rate prospectively from 5% to 9.5% and increased the eligibility threshold from $250,000 to $450,000. It also linked the new threshold to the Consumer Price Index (CPI), projecting a rise in the threshold to correlate with a rise in the CPI. These changes, however, would not take effect until at least six months after Mobil announced them, pending approval by the IRS. The delayed effective date gave employees who were eligible for the lump-sum payment under the old criteria, but who might not meet the new threshold, the opportunity to decide whether to retire and take the lump sum or to continue working and accumulating more pension benefits with the possibility that they might not accumulate sufficient additional benefits to meet the new threshold requirement at the date of their retirement.
 
 
 5
 Mitchell, 896 F.2d at 466.
 
 
 6
 On July 16, 1984, Mobil sought a determination from the IRS that the plan as amended continued to meet the Internal Revenue Code's requirements for favorable tax treatment, including the requirement that pension plans not "discriminate in favor of highly compensated employees." 26 U.S.C. § 401(a)(4). In meetings in late September 1984, the IRS reviewing agent expressed concern that the amended plan could result in benefits favoring highly compensated employees, and indicated that he might need to seek technical advice from Washington. In response, Mobil adopted another plan amendment allowing Mobil, in its sole discretion, to waive the eligibility threshold in individual cases for valid cause shown. After insertion of this provision, the IRS issued to Mobil a favorable determination letter on November 23, 1984, noting that continued qualification of the plan would depend upon its effect in operation.
 
 
 7
 Mobil announced the IRS approval to its employees on December 21, 1984, but did not notify its employees of the waiver provision until well after expiration of the six-month window--October 1985.
 
 Christopher, 950 F.2d at 1213.[2]
 
 8
 Porter Mitchell, the plaintiff in Mitchell, was a fifty-six year old Mobil employee who retired during the six-month window period, and took his retirement benefits under the lump-sum $250,000 option, for which he qualified.[3] He brought suit, claiming that, by amending its retirement plan, Mobil had willfully violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, by constructively discharging him because of his age, had "breached its fiduciary duties under ERISA and had violated ERISA's anti-cutback provision, 29 U.S.C. § 1054(g), by retroactively limiting his right to the lump-sum benefit, an accrued benefit." Mitchell, 896 F.2d at 466. He also claimed that Mobil violated § 510 of ERISA, 29 U.S.C. § 1140, which prohibits discrimination against or discharge of a participant in an ERISA-covered benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."
 
 
 9
 After receiving a favorable jury verdict awarding him substantial damages, this court reversed the award on appeal. We held that Mitchell had established that he had been constructively discharged because of his age, but that he had failed to prove that Mobil's proffered justification for its plan amendment was a mere pretext for discrimination.[4] Accordingly, his ADEA claim failed.
 
 
 10
 We held that Mitchell lacked standing under ERISA to challenge the plan amendment, and therefore reversed the award. We observed that the definition of "participant" under ERISA "excludes ... former employees who have received a lump-sum payment of all their vested benefits because 'these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments.' " Mitchell, 896 F.2d at 474 (quoting Joseph v. New Orleans Elec. Pension & Retirement Plan, 754 F.2d 628, 630 (5th Cir.), cert. denied, 474 U.S. 1006, 106 S.Ct. 526, 88 L.Ed.2d 458 (1985)). And we held Mitchell lacked standing as a former employee with a "reasonable expectation of returning to covered employment," Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989), because he had never sought reinstatement.
 
 
 11
 The Christopher plaintiffs also elected to retire during the six-month window period, opting for the lump-sum benefit under the old $250,000 criteria. They similarly filed suit, claiming that Mobil's conduct surrounding the plan amendment constituted age discrimination in violation of the ADEA, as well as "common-law fraud, civil conspiracy, unlawful interference with contract rights, breach of the employment contract, negligence, and gross negligence." Christopher, 950 F.2d at 1213. The plaintiffs' complaint also alleged "in brief and conclusory fashion" that Mobil's conduct violated ERISA. Id.[5]
 
 
 12
 The district court granted Mobil's motion for summary judgment on the ADEA claims, holding that they were time-barred and granted Mobil's motion for judgment on the pleadings on the state law claims, holding that they were preempted by ERISA. It granted Mobil's Fed.R.Civ.P. 12(b)(1) and (6) motion to dismiss the contingent ERISA claim on the ground that plaintiffs were not "participants" under ERISA. On appeal, the Fifth Circuit affirmed the grant of summary judgment on the ADEA claims because they were time-barred, affirmed the dismissal of the state law claims as preempted by ERISA, but reversed the dismissal of plaintiffs' ERISA claims and remanded the matter to permit plaintiffs to plead their ERISA claims with greater specificity. The court specifically noted that it had "not determined that appellants [plaintiffs] will be able to establish a violation of section 510, only that they should be allowed to attempt to do so." Christopher, 950 F.2d at 1223.
 
 
 13
 Plaintiffs in this case are a class of former employees who retired on or before January 1, 1985, who were not told of the waiver option, and who assert that they would not have lost their jobs had they known of their right to apply for a waiver. They also allege that they were unaware of the fact that the $250,000 threshold could be "grandfathered" for each of them, by virtue of the enactment of the Retirement Equity Act ("REA"), effective July 31, 1984.[6] Specifically, they argue that:Mobil interfered with their right to the lump sum benefit under the $250,000 test by fraudulently leading plaintiffs to believe that that right was conditioned on an additional requirement, namely that plaintiffs retire early, when in fact that additional condition did not really exist. Plaintiffs were also discharged for the exercise of their right to the lump sum benefit under the $250,000 test and the right to be free from the cutback of that benefit. And Mobil fraudulently caused plaintiffs' discharges so that they could not attain the right under the Plan to apply for a waiver of the $450,000 requirement, and thereby keep both their jobs and the lump sum benefit.
 
 
 14
 Brief of Appellees at 24-25.
 
 
 15
 They filed suit, alleging that Mobil's conduct constituted a willful violation of the ADEA, as well as a violation of section 510 of ERISA.[7] Plaintiffs amended their complaint twice, ultimately deleting all of their ERISA claims except those based on a fraudulent discharge in violation of section 510. As a result of the alleged ERISA violations, plaintiffs seek
 
 
 16
 all equitable and other relief as may be necessary to redress plaintiffs' rights asserted under those claims and to redress the violations of law alleged in those claims, including an order compelling reinstatement or equitable reinstatement of each plaintiffs' employment at a status and salary commensurate with his tenure as though his employment with Mobil were uninterrupted and with all previously elected retirement benefits, as well as accounts benefits, both past and future, as well as all other compensatory, consequential, and incidental measures of restitution, together with interest, attorneys' fees, costs, expert witness fees, punitive and exemplary damages.
 
 
 17
 Third Amended Complaint at 22, Appellant's Appendix Vol. I at A000022.
 
 DISCUSSION
 
 18
 Under ERISA § 502, 29 U.S.C. § 1132, "participants" have standing to bring civil actions to enforce their rights under the terms of an ERISA-covered benefit plan or to enforce ERISA's provisions.[8] The term "participant" is statutorily defined as "any employee or former employee of an employer, ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." ERISA § 3(7), 29 U.S.C. § 1002(7). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989) the Supreme Court further defined the term "participant," holding that it "is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." (quoting Saladino v. I.L.G.W.U. Nat'l Retirement Fund, 754 F.2d 473, 476 (2d Cir.1985), and Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.) (per curiam), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)). The Court has defined the statutory term "may become eligible" as requiring proof that the claimant has "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Firestone, 489 U.S. at 117-18, 109 S.Ct. at 958; see also Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564, 581 n. 16 (10th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991). Thus, to have standing to bring an ERISA action, plaintiffs must either be employees in or reasonably expected to be in currently covered employment, or former employees with a reasonable expectation of returning to covered employment or a colorable claim to vested benefits. Employees or former employees seeking to show they "may become eligible" for a benefit must prove that they have a colorable claim that they will prevail in a suit for benefits, or that eligibility requirements will be fulfilled in the future.
 
 
 19
 Plaintiffs argue that this case is like Christopher and, more importantly, is distinguishable from Mitchell. They therefore claim they should be afforded standing as participants, as the Christopher plaintiffs provisionally were, and not be bound by our finding of no standing in Mitchell.
 
 
 20
 The crucial difference they assert exists between this case and Mitchell is that the entire case in Mitchell proceeded on the theory that Porter Mitchell was presented with a choice between retiring under the $250,000 lump sum option and continuing to work with the uncertainty of ever qualifying for the $450,000 lump sum. Thus, they characterize our Mitchell opinion as holding that "an employee faced with a difficult choice between preserving a valuable retirement benefit but giving up his job versus foregoing the benefit and keeping his job generally cannot choose the former, leave his job with all earned wages and benefits paid, and then later sue under ERISA for wages and benefits not earned." Brief of Appellees at 2. They assert that the choice Mr. Mitchell made was a "conscious one" even if "coercive" and amounting to a "constructive discharge." Because Mr. Mitchell's choice was conscious, plaintiffs argue, he could only establish ERISA standing by meeting one of the tests for "former employees" under Firestone--either a colorable claim to vested benefits or a reasonable expectation of returning to covered employment.
 
 
 21
 By contrast, they assert that plaintiffs' choices here were not conscious, because they were fraudulently procured and were therefore "no different from outright firings under ERISA § 510." Id. at 3. Relying on Christopher, they argue that Mobil's deceptive and fraudulent conduct, in violation of ERISA, vitiated the voluntariness of their decisions to retire. They therefore assert that, unlike Porter Mitchell, they need not establish standing as "former employees." While plaintiffs are obviously in fact former employees, they argue they are to be viewed legally as current employees, with clear participant status because they were current employees at the time of the ERISA violation which effectively involuntarily discharged them.[9] Even if they have to establish standing as former employees, plaintiffs argue they have demonstrated the existence of a genuine factual issue as to whether they have a reasonable expectation of returning to covered employment, such that Mobil's motion for summary judgment was properly denied.
 
 
 22
 Mobil responds that this case "is Mitchell redux." Brief of Appellant Mobil Oil Corporation at 17. It contends both that Mr. Mitchell clearly argued and the Mitchell opinion clearly held that an employee who retires, even if fraudulently induced to do so, and takes all the vested benefits to which he is entitled and does not ask his employer for reinstatement and has no reasonable expectation, based on custom or practice, that he will be reinstated, lacks standing to bring an ERISA action. He is clearly a former employee, who has no colorable claim to vested benefits (he has received them all already and cannot show that he will fulfill eligibility requirements in the future) and has no reasonable expectation of returning to covered employment (he has not sought reinstatement from his employer, and has no factual basis for believing that he will be reinstated).[10] He is merely seeking damages, not ERISA-protected benefits.
 
 
 23
 Thus, Mobil asserts that Mitchell correctly established a bright-line test that ERISA protects only benefits, and an employee who leaves his employment, under any circumstance, and receives all his benefits, cannot sue under ERISA. Moreover, Mitchell established that a request for judicial reinstatement is per se insufficient to establish a reasonable expectation of returning to covered employment. "Thus, ERISA does not provide a cause of action for former employees who have fulfilled all their eligibility requirements, received the full amount of their vested benefits, and seek only (a) reinstatement to accrue further benefits or (b) damages based on years they never worked." Brief of Appellant Mobil Oil Corporation at 28-29.
 
 
 24
 We review the denial of a motion for summary judgment de novo, applying the same standard as did the district court. Miller v. Coastal Corp., 978 F.2d 622 (10th Cir.1992). Summary judgment will only be granted if "viewing the facts in the light most favorable to the opposing party, there is no genuine issue of material fact in dispute and the moving party should prevail as a matter of law." Millensifer v. Retirement Plan for Salaried Employees of Cotter Corp., 968 F.2d 1005, 1007 (10th Cir.1992) (quoting Woolsey v. Marion Lab., Inc., 934 F.2d 1452, 1456 (10th Cir.1991)); Boren v. Southwestern Bell Tel. Co., Inc., 933 F.2d 891, 892 (10th Cir.1991).
 
 
 25
 We begin by rejecting plaintiffs' rather novel argument that they really are, legally, current employees. As indicated, ERISA provides a remedy for "participants." "Participants" include " 'employees in, or reasonably expected to be in, currently covered employment,' " Firestone, 489 U.S. at 117, 109 S.Ct. at 957-58 (quoting Saladino, 754 F.2d at 476), or certain "former employees." Attributing " 'conventional meanings to the statutory language,' " id., as we must, it defies common sense to conclude that employees who retired some seven years ago are anything other than "former employees." Thus, plaintiffs are, in fact and in law, "former employees." See Katzoff v. Eastern Wire Prod. Co., 808 F.Supp. 96, 98 (D.R.I., 1992) (rejecting argument that plaintiff was a current employee and therefore an ERISA participant even though he was "not currently working."); Andre v. Salem Technical Serv., 797 F.Supp. 1416, 1421 (N.D.Ill.1992) ("Because [plaintiff] no longer works for [employer], he does not fall within the statutory provision for suits by current 'employees.' ").
 
 
 26
 In reaching this conclusion, we similarly reject plaintiffs' related argument that their standing as participants should be judged as of the time of the ERISA violation and not as of the time of their lawsuit. Such an interpretation runs counter to the natural meaning of ERISA itself. Section 502 provides that "[a] civil action may be brought ... by a participant ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502, 29 U.S.C. § 1132 (emphasis added). The statute by its terms does not permit a civil action by someone who was a participant at the time of the alleged ERISA violation. Cf. Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 951 n. 2 (6th Cir.1990) ("The Plan provides benefits for a 'Former Participant,' a term that is not defined or mentioned in ERISA."), cert. denied, 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991). Rather, it is written in the present tense, indicating that current participant status is the relevant test. See Winchester v. Pension Comm. of Michael Reese Health Plan, Inc., 942 F.2d 1190, 1194 (7th Cir.1991) ("[Plaintiff] was not a plan participant at the time the action was filed and thus has no standing."); Yancy v. American Petrofina, Inc., 768 F.2d 707, 708 (5th Cir.1985) ("[Q]uestions of standing must be resolved on the facts existing when the challenge is raised."); McKinnon v. Cairns, 698 F.Supp. 852, 858 (W.D.Okla.1988). Furthermore, there would be little need for the widely-invoked category of "former employees" if participant status was based upon status at the time of the alleged ERISA violation.[11]
 
 
 27
 Having concluded that plaintiffs must meet the requirements for former employees in order to satisfy ERISA's "participant" requirement, we conclude that, despite plaintiffs' artful attempts to fit within Christopher, Mitchell compels the conclusion that plaintiffs lack standing.
 
 
 28
 As indicated, only former employees who are or "may become eligible to receive a benefit of any type from an employee benefit plan" satisfy the participant requirement of ERISA. That definition includes "former employees who 'have ... a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." Firestone, 489 U.S. at 117, 109 S.Ct. at 958 (quoting Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.) (per curiam), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986)). A former employee may further prove that he or she "may become eligible" to receive a benefit by showing he or she has "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." Id.
 
 
 29
 We held in Mitchell that that definition simply "excludes ... former employees who have received a lump-sum payment of all their vested benefits because 'these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments.' " Mitchell, 896 F.2d at 474 (quoting Joseph, 754 F.2d at 630); see also Sanson v. General Motors Corp., 966 F.2d 618, 621 (11th Cir.1992) (retiree claiming he was fraudulently induced to retire early is not an ERISA participant); Boren, 933 F.2d at 893-94; Teagardener, 909 F.2d at 952 ("Explicit in the Supreme Court's definition of 'participant' in Bruch is a requirement that the plaintiffs prove either that their right to assets has 'vested' or will 'vest.' "); Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 714 (9th Cir.1990) ("former employees whose vested benefits under a plan have already been distributed in a lump sum at the time they file suit are not 'participants' within the meaning of section 1002(7)"). They therefore seek "a damage award, not vested benefits improperly withheld." Mitchell, 896 F.2d at 474; Boren, 933 F.2d at 893-94; Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 671 (3rd Cir.1988) ("As a general rule, employees who take early retirement and elect to receive lump sum retirement benefits do not have standing to seek the increased payment later made to retirees or to challenge changes in the retirement plan."), vacated, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989); Kuntz, 785 F.2d at 1411 ("plaintiffs are not participants because, as former employees whose vested benefits under the plan have already been distributed in a lump sum, [they] were not 'eligible to receive a benefit' and were not likely to become eligible to receive a benefit, at the time they filed the suit."); Yancy v. American Petrofina, Inc., 768 F.2d 707 (5th Cir.1985) (per curiam); cf. Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 350 (5th Cir.1989) (plaintiffs are ERISA participants because they claimed "that the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan...."). The crucial point is the receipt of the "full extent" of their vested benefits. That is equally true of plaintiffs in this case. They too seek a damage award based upon their allegedly fraudulent discharge from their jobs; they do not seek "vested benefits improperly withheld."
 
 
 30
 Plaintiffs invoke the Christopher court's analysis in an attempt to avoid the breadth of that holding in Mitchell. Thus, they argue that the fact that Mobil fraudulently induced them to retire by hiding from them the existence of the waiver provision and certain facts which they needed to be able to properly evaluate the impact of the REA on their pension rights, somehow renders our Mitchell holding inapplicable to them. We disagree. The existence of fraud is irrelevant to the linchpin of our Mitchell holding--the receipt of all benefits to which the employee is entitled under the plan.
 
 
 31
 Furthermore, the Christopher court itself acknowledged, in its discussion of plaintiffs' ADEA claims, that the alleged fraud made no legal or conceptual difference concerning the voluntariness of plaintiffs' decision:
 
 
 32
 [A]ppellants allege a constructive discharge arising from the choice to which they were put by the plan amendment. To further argue that the actual election made was involuntary because it was based on incomplete information would be superfluous; involuntariness is implicit in appellants' argument that they were coerced into early retirement by the threatened removal of the lump sum option.
 
 
 33
 Christopher, 950 F.2d at 1215. Similarly, plaintiffs here cannot say that the constructive discharge in Mitchell was actually a conscious choice whereas the equally compelled discharge here was completely involuntary simply because plaintiffs here acted on incomplete information.
 
 
 34
 Moreover, the Christopher court's "but for" standing analysis--"but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits", Christopher, 950 F.2d at 1221--amounts to the kind of analysis rejected by the Supreme Court in Firestone: "[t]o say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." 489 U.S. at 117, 109 S.Ct. at 957. To say that but for Mobil's conduct, plaintiffs would have standing is to admit that they lack standing and to allow those who merely claim to be participants to be deemed as such. See Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir.1986) ("The effect of reading a 'but for' test is to impose participant status on every single employee who but for some future contingency may become eligible. Neither caselaw nor other provisions of ERISA supports such a reading of 'participant.' "). Plaintiffs therefore cannot, under Firestone, Mitchell, and Boren, show that they are former employees with a colorable claim to vested benefits.[12]
 
 
 35
 Plaintiffs also assert that they satisfy the "participant" requirement as former employees with "a reasonable expectation of returning to covered employment." More specifically, they argue that there is a genuine factual dispute as to that issue, such that summary judgment for Mobil on their ERISA claims would be improper.
 
 
 36
 In Mitchell, we agreed with Mobil that Mr. Mitchell "has never had a reasonable expectation of returning to covered employment." In so doing, we observed that Mr. Mitchell "did not claim that Mobil had improperly withheld vested benefits. He also did not make such a claim in his complaint, nor did he seek reinstatement." Mitchell, 896 F.2d at 474 (emphasis added).
 
 
 37
 Mobil argues we established a clear rule that a request for judicial reinstatement is per se insufficient to establish a "reasonable expectation of returning to covered employment," because Mitchell made it clear to this court in his briefs and his petition for rehearing that he had sought judicial reinstatement. Thus, Mobil argues that our rejection of his argument must be viewed in that context and must be read as implying that a request for judicial reinstatement alone is insufficient.
 
 
 38
 We are reluctant to read anything more into a judicial opinion, even one of our own, than what the plain words of the opinion state. Viewing the actual language of our Mitchell opinion alone, without any background information to which we may be privy but which others lack, we must conclude that the opinion does not establish any per se rule concerning the effect of a request for judicial reinstatement. The opinion simply observes that Mr. Mitchell did not "seek reinstatement," and that was one reason why he did not have a reasonable expectation of returning to covered employment. Mitchell is unclear as to what kind of request for reinstatement was insufficient to establish a reasonable expectation of returning to covered employment.
 
 
 39
 We agree with Mobil, however, that plaintiffs here cannot satisfy ERISA's participant requirement by claiming to be former employees with a reasonable expectation of returning to covered employment. Few cases have examined carefully what constitutes such a reasonable expectation. We agree with the analysis in Shawley v. Bethlehem Steel Corp., 784 F.Supp. 1200, 1205 (W.D.Pa.1992):
 
 
 40
 Plaintiffs had no statutory right to be rehired, nor any contractual right to be rehired.... It would be paradoxical to hold that the pension plan provisions gave them more. For a reasonable expectation of returning to employment to exist, there must be a claim of right on the part of the former employee to return to work.
 
 
 41
 See also Winchester v. Pension Comm. of Michael Reese Health Plan, Inc., 942 F.2d 1190, 1193 (7th Cir.1991) (refusing to hold that "by filing a discrimination suit, [after being dismissed for cause], plaintiff may harbor a 'reasonable expectation of returning to covered employment.' "); Zydel v. Dresser Indus., Inc., 764 F.Supp. 277, 280-81 (W.D.N.Y.1991) (reasonable expectation of returning to covered employment evaluated with reference to four specific pieces of evidence); Rhee v. Witco Corp., 762 F.Supp. 211, 213 (N.D.Ill.1991) (ERISA plaintiff had no reasonable expectation of returning to covered employment because he "does not seek to return to work ...; he wants only to obtain the benefits he would have accrued had he continued to work."); Deller v. Portland Gen. Elec. Co., 727 F.Supp. 1369, 1370 (D.Ore.1989) (former employees terminated pursuant to a reduction in force "are clearly not employees ... who have a reasonable expectation of returning to covered employment."). We hold as a matter of law that a reasonable expectation of returning to covered employment cannot encompass the undisputed situation here, where plaintiffs retired, received all their vested benefits, did not ask their employer for reinstatement and can point to nothing suggesting that Mobil will, should or must reinstate them, but instead filed suit seeking reinstatement to commence accruing benefits anew.
 
 
 42
 Finally, plaintiffs suggest that a definition of "participant" which excludes them will leave them without a remedy, inasmuch as their state law claims were held preempted by ERISA.[13] Preemption is not at issue in this case, and we do not address it. However, we note that the fact that a state law claim may be preempted does not necessarily mandate that there be an ERISA remedy. See Corcoran v. United HealthCare, Inc., 965 F.2d 1321, 1333 (5th Cir.) ("While we are not unmindful of the fact that our interpretation of the preemption clause leaves a gap in remedies within a statute intended to protect participants in employee benefits plans, the lack of an ERISA remedy does not affect a pre-emption analysis."), cert. denied, --- U.S. ----, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); Cromwell v. Equicor HCE Corp., 944 F.2d 1272, 1276 (6th Cir.1991) ("Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without a remedy."), cert. denied, --- U.S. ----, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); Hospice of Metro Denver, Inc. v. Group Health Ins., 944 F.2d 752, 755 (10th Cir.1991) ("We are aware that preemption normally is not dependent upon the availability of ERISA remedies.") (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987); Lister v. Stark, 890 F.2d 941, 946 (7th Cir.1989)).[14]
 
 
 43
 Furthermore, while pension and other benefits are undeniably an important part of an employee's compensation package, they are nonetheless an adjunct to the primary item which the employee has--his or her job. And, ERISA's goal of protecting those benefits from interference does not transform ERISA's statutory scheme into a federal job protection scheme where those benefits are fully paid out, or create a federal cause of action for wrongful discharge.[15] To do so would, as Mobil argues, transform traditional employment law in the fifty states.[16] We cannot believe Congress intended such a result when it enacted ERISA. Cf. Patterson v. Shumate, --- U.S. ----, ----, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992) ("ERISA's goal ... [is to] protect[ ] pension benefits.") (emphasis added); Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985) (purpose of ERISA is "to protect contractually defined benefits."); Hospice of Metro Denver, 944 F.2d at 755-56; Gavalik v. Continental Can Co., 812 F.2d 834, 851 (3rd Cir.) ("Proof of incidental loss of benefits as a result of a termination will not constitute a violation of § 510."), cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir.1986) ("the legislative intent of ERISA was not to assure the sanctity of early retirement expectations, but to safeguard accrued retirement benefits.").[17]
 
 
 44
 For the foregoing reasons, we REVERSE the district court's denial of Mobil's motion for summary judgment on plaintiffs' ERISA claims and REMAND for entry of summary judgment in favor of Mobil.
 
 
 
 [1]
 28 U.S.C. § 1292(b) permits interlocutory appeals from orders involving "a controlling question of law as to which there is substantial ground for difference of opinion...." By order dated September 30, 1992, a panel of this court granted Mobil's petition to bring this interlocutory appeal, and ordered the appeal expedited
 
 
 [2]
 The existence of the waiver provision was not discovered by Mitchell in his case until trial was underway. Our decision in Mitchell makes no mention of the waiver provision. The plaintiffs in Christopher argued that the concealment of the waiver option was fraudulent, and the plaintiffs in this case have, following Christopher, made the same fraud argument concerning the waiver option
 
 
 [3]
 As we noted in our decision, the availability of the lump-sum option "was important to Mr. Mitchell because at the time he was making [his choice], the market interest rate was over 9%. As a result, his lump sum, discounted at 5%, was worth approximately 140% more than his annuity." Mitchell, 896 F.2d at 466
 
 
 [4]
 We observed that "[t]he relevant question [in a constructive discharge case] is whether Mobil's amendment of the Plan forced Mr. Mitchell, and similarly situated employees, to choose between two options both of which would leave him worse off than the status quo." Mitchell, 896 F.2d at 467. We held that it did, because Mitchell was forced to choose between (1) retiring during the six-month window period, as he in fact did, and receiving the lump-sum option under the old ($250,000) eligibility requirement, and (2) continuing to work, but having to requalify for the lump-sum option under the new ($450,000/linked to the CPI) criteria, and being uncertain if he ever would in fact so qualify. Either option was less desirable than the status quo--continuing to work, knowing that he was qualified for a lump-sum retirement when he decided to retire
 
 
 [5]
 The brevity of plaintiffs' ERISA allegations was apparently the result of their desire to preserve the ERISA claims in the event their state law claims were held preempted by ERISA
 
 
 [6]
 Section 301 of the REA prohibits the retroactive elimination of "an optional form of benefit" by means of a plan amendment. 29 U.S.C. § 1054(g). However, the REA specifically states that section 301's prohibition applies only to plan amendments made after July 30, 1984. 29 U.S.C. § 1001, Historical Note (Pub.L. 98-397, Title III, §§ 302, 303, Aug. 23, 1984, 98 Stat. 1451 § 302(d)(1)). Mobil formally adopted the plan amendment on June 13, 1984, prior to the effective date of the REA. However, because it did not receive IRS approval at that time for the entire amendment, it did not in fact adopt the plan with the waiver provision until September, 1984. Thus, plaintiffs argue that the entire plan amendment was subject to the REA, so that the right to retire under the $250,000 lump sum was "grandfathered". While they do not suggest that Mobil can be charged with concealing the existence and effect of the REA, they do claim that Mobil concealed the facts (i.e. the true date of the plan amendment) bearing upon their rights under the REA
 
 
 [7]
 ERISA § 510, 29 U.S.C. § 1140, provides in pertinent part:
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant ... for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....
 
 
 [8]
 Section 502 provides in pertinent part:
 (a) Persons empowered to bring a civil action
 A civil action may be brought--
 (1) by a participant or beneficiary--
 (A) for the relief provided for in subsection (c) of this section, or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 ERISA § 502, 29 U.S.C. § 1132.
 
 
 [9]
 They alternatively argue that their standing as participants must be determined as of the time of the ERISA violation, and not at the time of their lawsuit. Under that theory too they would have participant status because they were clearly participants at the time of the alleged ERISA violation, and they would not have to meet the former employee tests for standing
 
 
 [10]
 Mobil argues that plaintiffs have failed to show either that they have a reasonable expectation of returning to covered employment or a colorable claim to vested benefits by showing that eligibility requirements will be fulfilled in the future
 
 
 [11]
 We disagree with plaintiffs' assertion that Drennan v. General Motors Corp., 977 F.2d 246 (6th Cir.1992), "held that an employee who has lost his status as a current employee and thus as an ERISA 'participant' as a result of his employer's deceit has standing to sue under ERISA because he had such standing at the time of the ERISA violation." Brief of Appellees at 5. In Drennan, the Sixth Circuit held that employees who were eligible for a certain benefit payout were participants for ERISA purposes, even though they had already received their benefits under another, less favorable, benefits plan. By contrast, plaintiffs here in fact received all benefits for which they were eligible. They cannot claim participant status based on eligibility for benefits not received
 
 
 [12]
 We also note, as have several other courts, that Department of Labor regulations interpreting ERISA specifically exclude from the definition of participant "an individual to whom an insurer has made an irrevocable commitment to pay all the benefits to which the individual is entitled under the plan." 29 C.F.R. § 2610.2. See, e.g., Teagardener, 909 F.2d at 952; Kuntz, 785 F.2d at 1412; Joseph, 754 F.2d at 630; Saladino v. I.L.G.W.U. Nat'l Retirement Fund, 754 F.2d 473, 476-77 (2d Cir.1985); see also 29 C.F.R. § 2510.3-3(d)(2)(ii)(B)
 
 
 [13]
 Counsel for plaintiffs stated at oral argument that they have appealed the state court decision finding preemption
 
 
 [14]
 Furthermore, ERISA preemption extends to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court has "repeatedly stated that a law 'relates to' a covered employee benefit plan for purposes of § 514(a) 'if it has a connection with or reference to such a plan.' " District of Columbia v. Greater Washington Bd. of Trade, --- U.S. ----, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (Dec. 14, 1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)); see also Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S.Ct. 478, 482-83, 112 L.Ed.2d 474 (1990); FMC Corp. v. Holliday, 498 U.S. 52, 58-59, 111 S.Ct. 403, 407-08, 112 L.Ed.2d 356 (1990); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); Monarch Cement Co. v. Lone Star Indus., Inc., 982 F.2d 1448, 1451-52, (10th Cir.1992)
 While ERISA's preemption clause is "conspicuous for its breadth," Ingersoll-Rand, 498 U.S. at 138, 111 S.Ct. at 482 (quoting FMC Corp. v. Holliday, 498 U.S. at 58, 111 S.Ct. at 407), we recently observed in Monarch Cement Co., that the:
 purpose of ERISA preemption is twofold. First, preemption "protect[s] the interests of employees and their beneficiaries in employee benefit plans." Second, preemption "ensure[s] that plans and plan sponsors are subject to a uniform body of benefit law ... [by] minimizing the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government."
 982 F.2d at 1453-54 (quoting Straub v. Western Union Tel. Co., 851 F.2d 1262, 1265 (10th Cir.1988) (quoting Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986)) and Ingersoll-Rand, 111 S.Ct. at 484). " 'What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative function of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit.' " Monarch Cement Co., 982 F.2d at 1452 (quoting Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146-47 (2d Cir.), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989)); see also National Elevator Indus., Inc. v. Calhoon, 957 F.2d 1555, 1558-59 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992).
 ERISA's preemptive reach, although broad, is not unlimited. Monarch Cement Co., 982 F.2d at 1452; Hospice of Metro Denver v. Group Health Ins., 944 F.2d 752, 755 (10th Cir.1991). In Monarch Cement Co., we tried to define the parameters of ERISA preemption, noting that the case law in the area is far from uniform:
 Laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application--often traditional exercises of state power or regulatory authority--whose effect on ERISA plans is incidental.
 Id. at 1452, (quoting Aetna Life Ins. Co., 869 F.2d at 146); see also National Elevator Indus., Inc., 957 F.2d at 1558-59; Hospice of Metro Denver, 944 F.2d at 755. Thus, ERISA does not preempt "if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." Greater Washington Bd. of Trade, --- U.S. at ---- n. 1, 113 S.Ct. at 583 n. 1 (quoting Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21)). An argument could certainly be made that the fraud claims plaintiffs have made in this case are such "laws of general applicability."
 Thus, this is not a case where the state law "specifically refers" to an ERISA plan, as in Greater Washington Bd. of Trade, --- U.S. at ----, 113 S.Ct. at 585, nor even where the preempted claim is "premised on" the existence of an ERISA plan, as in Ingersoll-Rand, 498 U.S. at 140, 111 S.Ct. at 483. The state law claim in Ingersoll-Rand was a common law claim for wrongful discharge based upon the employer's desire to prevent the employee from vesting in his benefit plan. There is no such claim here. Rather, plaintiffs here simply allege a wrongful discharge, achieved through fraud. The fact that an ERISA plan was merely part of the means by which Mobil allegedly fraudulently procured plaintiffs' dismissal does not necessarily compel the conclusion under Ingersoll-Rand that that state law claim is "premised on" the existence of an ERISA-covered plan. Cf. Tolle v. Carroll Touch, Inc., 977 F.2d 1129 (7th Cir.1992) (state law wrongful discharge claim preempted because claim was that plaintiff was discharged in order to avoid payment of benefits under ERISA plan); but see Sanson v. General Motors Corp., 966 F.2d 618, 621 (11th Cir.1992) (plaintiffs' state law fraud claim for fraudulently induced retirement is preempted).
 
 
 [15]
 Indeed, Congress knows perfectly well how to create a federal cause of action for wrongful discharge when it wants to. See, e.g., the ADEA, 29 U.S.C. §§ 621-634; Title VII, 42 U.S.C. § 2000e et seq
 
 
 [16]
 Under plaintiffs' theory, to the extent that the employer-employee relationship allows termination at-will under state law, employers would, in some instances, no longer be able to exercise that right whenever an ERISA-covered plan is part of an employee's compensation package
 
 
 [17]
 The appellees' "Request For Leave to File Limited Sur-Reply in Opposition to Motion to Strike Appellees' Supplemental Appendix and Portions of Appellees' Brief" is granted. Appellant's "Motion to Strike Appellees' Supplemental Appendix and Portions of Brief Relying on Supplemental Appendix" is granted insofar as it relates to materials which were not before the district court in this case