**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PAUL HOUSTON; JOHN J. MOSA; JOHN
DOES,

        *Plaintiffs-Appellants,*

v.

BUILDING TRADES WELFARE
FUND FOR THE OHIO VALLEY; KIM
CARFAGNA, as Trustee; JAMES E.
BROWN, as Trustee; NICK KARRAS, as
Trustee; MATT MANSUETTO, as
Trustee; RAY PARR, as Trustee; JOHN
STOFFER, as Trustee; CHARLES
VOGLER, as Trustee; JOYCE BURCH,
Administrator; GARY KOSKY, as
Trustee,

        *Defendants-Appellees.*

No. 03-2078

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., District Judge.
(CA-02-88-5)

Argued: June 3, 2004

Decided: August 4, 2004

Before WIDENER and DUNCAN, Circuit Judges, and
Louise W. FLANAGAN, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** William Anthony Kolibash, PHILLIPS, GARDILL, KAISER & ALTMEYER, Wheeling, West Virginia, for Appellants. Ronald G. Macala, MACALA, BAASTEN, MCKINLEY & PIATT, L.L.C., Canton, Ohio, for Appellees. **ON BRIEF:** Yolanda G. Lambert, SCHRADER, BYRD & COMPANION, P.L.L.C., Wheeling, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Plaintiffs-appellants Paul Houston, John J. Mosa, and an unidentified number of "John Does" (collectively "Appellants") brought suit against the Building Trades Welfare Fund for the Ohio Valley ("Building Trades Fund" or "the Fund"), several of its trustees, and its administrator (collectively "Appellees") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover allegedly forfeited benefits and for breach of fiduciary duty. After the parties filed cross-motions for summary judgment, the district court held that Appellants were not "participants" as that term is used in 29 U.S.C. § 1132(a) and thus lacked standing to bring their claims under ERISA. We affirm.

I.

The Building Trades Fund is a multi-employer benefits plan established by various labor unions and employer associations to provide health and welfare benefits to eligible union members. A Board of Trustees governs the Fund pursuant to an Agreement and Declaration of Trust ("Trust Agreement"). From October 2001 through March 2002, defendants-appellees Kim Carfagna, James E. Brown, Nick

Karras, Matt Mansuetto, Ray Parr, John Stoffer, Charles Vogler, and Gary Kosky were serving as trustees. The Board has delegated responsibility for the day-to-day operations of the Fund to the plan administrator, defendant-appellee Joyce Burch.

The terms under which the Fund provides health and welfare benefits are described in the Summary Plan Description ("SPD"). To be eligible for benefits, an individual must be working in "covered employment" — i.e., employment pursuant to a collective bargaining agreement ("CBA") entered into between a local union supporting the Fund and an employer that is a signatory to that CBA, and which obligates the employer to make contributions to the Fund. An employer contributes a dollar amount, set by the CBA, for each hour that a participant works in covered employment. Contributions in excess of the quarterly requirement are placed in the participant's "credit bank," and are used to offset shortfalls during quarters in which the participant is not generating sufficient contributions. In this way, the credit bank permits participants to maintain benefits year-round despite the seasonal nature of construction work. If a union withdraws from the Fund, the Trust Agreement and SPD allow its members to remain eligible for benefits provided (1) that the union "gives notice to the Fund of it's [sic] withdrawal at least 120 days in advance" and (2) "any required changes to the applicable Collective Bargaining Agreement are made and the Fund Office is notified of such changes, 120 days prior to the effective date of the withdrawal." J.A. 215 (SPD); *see also* J.A. 607 (Trust Agreement).

At the October 31, 2001 meeting of the Board of Trustees, Rich Wilson, a trustee and representative of Bricklayers Locals 1 and 15 of West Virginia, and appellant Houston, an "alternate trustee"[1] and

---

[1]According to Amendment 8 to the Trust Agreement, an alternate trustee represents an employer or union, but takes part in the decision making process only if the trustee that would normally represent that employer or union is absent. The record is unclear when Houston became an alternate trustee. His deposition testimony indicates that he was elected an "alternate trustee" in the spring of 2001, J.A. 88, yet the Trust Agreement was only amended to create the position of alternate trustee at the October 31 meeting. The minutes for that meeting record Houston's presence not as a trustee, but merely as representative for Bricklayers Local 9.

representative of Bricklayers Local 9 of Ohio, gave notice that their unions would be withdrawing from the Building Trades Fund effective March 1, 2002 (120 days from the October 31 Board meeting). Neither Wilson nor Houston gave the Board notice that their CBAs had been amended to reflect the withdrawals. In fact, the withdrawing unions did not amend their CBAs until February 2002, after they reached an agreement with the Ohio Bricklayers Health and Welfare Fund ("Ohio Bricklayers Fund") to provide benefits beginning June 1, 2002. Sometime in March, copies of these amended CBAs were sent to the Building Trades Fund.

On March 5, 2002, the Board of Trustees held its next meeting. At this meeting, the Board elected to extend benefits for otherwise eligible members of the withdrawing unions. This extension effectively meant that the members could continue to draw on their credit banks until June 1, 2002. Individuals with credits still in their credit banks on June 1 would forfeit them. The Board sent a notice to all members of the withdrawing unions advising them of the extension and of the subsequent forfeiture. Houston, Mosa, and the John Does are members of Locals 1, 9, and 15, respectively, with credits remaining in their credit banks on June 1, 2002.

## II.

On July 23, 2002, Appellants filed the instant action. In their complaint, they asserted that Appellees violated ERISA by denying them the outstanding credits in their credit banks and sought equitable relief to have those credits transferred to the Ohio Bricklayers Fund. They also alleged that the Appellees breached their fiduciary duties in making various decisions relating to the unions' withdrawal. After conducting discovery, the parties filed cross-motions for summary judgment.

In their motion, Appellees argued that Appellants lacked standing to bring claims under ERISA because they were not participants in the Building Trades Fund at the time they filed the instant lawsuit. To have standing under ERISA, a plaintiff must be a "participant," "beneficiary," or "fiduciary" of the plan. 29 U.S.C. § 1132; *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir.

2003). To qualify as a "participant,"[2] a plaintiff must demonstrate that he is an "employee or former employee of an employer, or [a] member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization." 29 U.S.C. § 1002(7). A person "may become eligible to receive a benefit" if he has a "colorable claim" either that he "will prevail in a suit for benefits" or that "eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989). Whether someone is a participant must be determined as of the time the lawsuit is filed. *See, e.g.*, *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir. 1994); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993).

Applying the *Firestone* test, the district court found that Appellants did not have a colorable claim. According to the court, the Board's decision to terminate coverage was consistent with the goals of the plan — forfeiture of benefits upon a union's withdrawal deters unions from withdrawing from the Fund and thereby protects the Fund's integrity. *Houston v. Bldg. Trades Welfare Fund of the Ohio Valley*, No. 5:02CV88, slip op. at 8 (N.D.W. Va. Aug. 5, 2003) (citing *Fagan v. Nat'l Stabilization Agreement of the Sheet Metal Indus. Trust Fund*, 60 F.3d 175, 181 (4th Cir. 1995)). Because the withdrawing unions failed to provide notice that "'the requisite changes in the applicable bargaining agreement[s]'" had been made, *id.* at 9 (quoting Trust Agreement amend. 6 (J.A. 607)), Appellants were not, and were not able to become, eligible for coverage after June 1, 2002 (more than seven weeks *before* the filing of this action). As such, Appellants were not participants of the Fund and therefore lacked standing to bring their ERISA claims. *Id.*

Appellants filed a timely appeal. We review the district court's determination that the Appellants lacked standing de novo. *Smith v. Pennington*, 352 F.3d 884, 888 (4th Cir. 2003).

---

[2]Appellants did not assert that they have standing as beneficiaries or as fiduciaries. Even if we considered Houston, as an alternate trustee, a fiduciary, he has not brought his claims in his fiduciary capacity. *See Sonoco Prods. Co.*, 338 F.3d at 372.

III.

On appeal, Appellants do not dispute that they failed to provide the 120-day notice "of any required" CBA amendments pursuant to the SPD and Trust Agreement. Rather, they argue that their failure is either excusable or irrelevant. As to Local 15, they assert that the failure to provide notice should be excused because the amendment could not be completed until Jim Brown, the management representative responsible for negotiating with Local 15, signed off on the amendment. Brown was unavailable for six weeks during early 2002 and thus could not authorize any amendment. As to Locals 1 and 9, they contend that no amendments were required because the CBA simply required the employer to make contributions to "a Welfare Fund," not the Building Trades Fund in particular. According to Appellants, because no amendment was required, no notice was required. These arguments are without merit.

First, the CBA for Local 15 specifically required employer contributions to be sent to the Building Trades Fund. There is consequently no dispute that Local 15 was *required* to amend its CBA to effect the change to the Ohio Bricklayers Fund. Even if we accepted the Appellants' assertion that Brown's unavailability for six weeks sometime in early 2002 excused their failure to amend Local 15's CBA during those six weeks, the notice of changes to the CBA had to be provided to the Fund on or before October 31, 2001, *months* before Brown's alleged unavailability. Because Local 15 failed to satisfy the notice requirement, its members were not entitled to continuing eligibility with the Building Trades Fund and thus the "John Doe" plaintiffs have not asserted a colorable claim.

Second, although it only referred to "a Welfare Fund," J.A. 174, the CBA for Locals 1 and 9 did require an amendment to direct contributions to the new employee benefits plan. The relevant portion of the CBA originally stated that "the Employer agrees to pay [a negotiated amount] per hour paid for employees as and for a Welfare Fund. Said payments to be reported on a combined fund reporting form and sent to: Bricklayers Local #1 Combined Fund" or, for Local 9, to the Bricklayers Local Union #9 Combined Fund. J.A. 174, 175. After the withdrawing unions chose the Ohio Bricklayers Fund, Locals 1 and 9 amended their CBA to require that contributions "be sent to the

Ohio Bricklayers Health & Welfare Fund." J.A. 195 (Local 1); J.A. 196 (Local 9). Thus, Appellants' assertion that Locals 1 and 9 were not required to amend their CBA is belied by the fact that they *did* amend it. As with Local 15, the failure to provide the Building Trades Fund with notice of these amendments 120 days prior to the unions' withdrawal means that the members of Locals 1 and 9 were not entitled to benefits after June 1, 2002.

Because the withdrawing unions were required to provide notice of these required amendments 120 days prior to withdrawing from the Fund, their failure to do so is fatal to Appellants' argument that they "may become eligible to receive a benefit." 29 U.S.C. § 1002(7). Appellants' assertions of error being meritless, we affirm the judgment of the district court for the reasons stated in its opinion and order.[3]

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[3]We do not address the district court's alternative holding that the Appellees were entitled to summary judgment on the merits. *See Houston*, slip op. at 10-15.