**Kevin McBRIDE, Plaintiff–Appellant,**

v.

**PLM INTERNATIONAL, INC., Defendant–Appellee.**

No. 97–15433.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1998.

Filed June 4, 1999.

Christopher W. Katzenbach, W. Kent Khtikian, Katzenbach and Khtikian, San Francisco, California, for the plaintiff-appellant.

Randall J. Sunshine, Liner Yankelevitz Sunshine Weinhart & Regenstreif, Santa Monica, California, for the defendant-appellee.

Before: D.W. NELSON, BEEZER, and TROTT, Circuit Judges.

## ORDER

The Opinion filed in this case on August 20, 1998, is hereby WITHDRAWN. A new Opinion of this appeal is filed with this order.

## OPINION

TROTT, Circuit Judge:

### OVERVIEW

Kevin McBride appeals the district court's order granting summary judgment

in favor of his employer PLM International, Inc. The district court dismissed his case on the ground that McBride's discharge in conjunction with the termination of the employee benefit plan left him without the "participant" status required to give him standing to sue under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1994). The district court relied on several Ninth Circuit cases which have held that a claimant's status is to be evaluated at the time of filing suit. These cases, however, do not control McBride's claim. Policy considerations stemming from ERISA mandate that participant status and standing under its whistleblower. provision be adjudged at the time of the alleged ERISA violation. To hold otherwise would allow an employer simply by wrongfully firing a whistleblowing employee and then terminating the Plan, wrongfully or otherwise, to deprive that employee of the right to sue the employer for retaliation prohibited by ERISA. Such a holding would undercut the very protections ERISA was designed to afford. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## BACKGROUND

Kevin McBride was hired by PLM International, Inc. ("PLM") in March of 1988 to work in its TEC department. Prior to his termination on August 9, 1994, he was promoted twice and received two bonuses in addition to several salary increases. During his employment, McBride's performance evaluations noted that his work was excellent or outstanding. Letters accompanying the bonuses commended him for his good work and significant contributions to the company.

In early April 1994, McBride met with Robert Tidball, President and CEO of PLM, and Douglas Goodrich, McBride's supervisor and a PLM Senior Vice President. They informed McBride that he had a bright future with the company and that he was in line for a promotion to the new position of Director of Operations for the TEC department. Also in April of 1994, McBride submitted a written request for payment of commissions earned during the previous three years. He met with his supervisor, Goodrich, to discuss the commissions. Goodrich informed McBride that he did not think PLM had to pay the commissions, but if the legal department believed it must, PLM would pay. The discussion became quite animated, culminating in McBride's threat to sue PLM if the commissions were not paid. After the meeting, Goodrich wrote a confidential memorandum to the PLM personnel department describing McBride's conduct and instructing that the letter be placed in McBride's file. After a few days, McBride apologized to Goodrich for his behavior. Goodrich informed McBride that if he was insubordinate again, he would be terminated. PLM paid the commissions to McBride one month after his written request.

After this incident, Goodrich requested that McBride prepare two reports for him. Goodrich testified that McBride never turned in the reports, only the raw data. McBride testified that he had turned in the two requested reports.

McBride was a participant in and beneficiary of both the PLM International Employee Profit Sharing and Tax Advantaged Savings Plan ("401–K Plan") and the PLM International Employee Stock Ownership Plan ("ESOP") (collectively "the Plans"). McBride was also an active member of the Employee ESOP Committee. In the spring of 1994, PLM announced its intention to terminate the ESOP and proposed to convert each share of PLM preferred stock held by the ESOP to one share of PLM common stock. McBride ardently opposed PLM's proposal and called for a meeting of employees to discuss the ESOP termination. He alleged that the preferred stock had a redemption price or value of $13.00 per share and the common stock had a market price of $3.06 per share. He argued that the conversion of

the preferred shares to common stock would result in the loss of the guaranteed dividends payable on the preferred shares and the reduction in value equal to the difference between the redemption price of the preferred stock and the market price of the common stock. McBride expressed his opposition personally to both Tidball and Goodrich.

PLM filed a request with the IRS for a determination of whether the termination of the ESOP would affect the ESOP's tax status or qualification. In July 1994, McBride and other members of the Employee ESOP Committee sent a letter to the U.S. Department of Labor asking it to submit comments to the IRS on the proposed ESOP termination. In the letter, McBride and other committee members provided information on the ESOP and the effect its termination would have on PLM employees.

PLM management was upset by the committee's letter and offered to pay for an outside attorney to review the propriety of the ESOP termination if the committee would withdraw the letter to the Labor Department. All committee members, except McBride, agreed to this proposal. They withdrew the letter. On August 9, 1994, less than three weeks after the letter incident, PLM discharged McBride. The proffered reasons were McBride's insubordinate conduct toward his supervisors and his failure to produce the requested reports.

In January 1995, PLM terminated the ESOP. All participants, including McBride, received a lump sum distribution of their benefits under the Plan. They received the value of the common rather than the preferred stock. Also, after McBride's termination, Goodrich held an employee meeting in which he allegedly stated that McBride was not discharged because of his opposition to the ESOP termination, but because of his work performance and poor attitude.

In his original complaint, McBride alleged he was terminated by PLM in retaliation for his opposition to the prospective termination of the ESOP and the 401–K Plan. McBride asserted four claims for relief: (1) violation of section 1140 of ERISA, the "whistleblower" section; (2) a supplemental state law claim for wrongful termination in violation of public policy; (3) a supplemental state law claim for defamation arising from PLM's publication of statements criticizing McBride after his termination; and (4) another state law claim for breach of the covenant of good faith and fair dealing from the terms of the Certificate of Designations, governing the preferred shares of PLM stock held by the ESOP.

PLM successfully moved, under Federal Rule of Civil Procedure 12(b)(6), for dismissal of the fourth cause of action for breach of the covenant of good faith and fair dealing on the basis that the claim was preempted by ERISA. Subsequently, McBride submitted an amended complaint which excluded the fourth cause of action. However, McBride appeals the decision of the district court finding this cause of action preempted by ERISA.

PLM then brought a motion for summary judgment alleging that McBride lacked standing to bring the ERISA claim. The district court granted summary judgment and dismissed the suit, holding that McBride failed to qualify as a "participant" under ERISA at the time of filing the lawsuit and therefore lacked standing to assert a claim for relief in federal court. Further, the court vacated its earlier rulings and dismissed the state claims on the ground that it lacked jurisdiction.

## DISCUSSION

■ Questions of federal subject matter jurisdiction are questions of law reviewed de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). A grant of summary judgment is reviewed de novo. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834, *amended by* 125 F.3d 1281 (9th Cir.1997).

## A. Standing to Sue Under ERISA

### 1. Participant Status Under Whistleblower Provision

ERISA allows a "participant" in an employee benefit plan to bring a civil action to enforce his rights under the terms of the plan or to enforce the provisions of ERISA. Section 1132, the civil enforcement provision of ERISA, provides that a civil action may only be brought by a participant, a beneficiary, a fiduciary, or the Secretary of Labor. *See* 29 U.S.C. § 1132 (1994). The list of potential claimants in section 1132 is exclusive. *Harris v. Provident Life & Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir.1994).

ERISA defines the term "participant" to include "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).

The Supreme Court has defined the term "participant" to mean "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (citations and internal quotation marks omitted). The Court also construed the "may become eligible" for benefits language of section 1002(7) to mean that "a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117–18, 109 S.Ct. 948. The Court reasoned that a former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, "simply does not fit within the phrase 'may become eligible.'" *Id.* at 118, 109 S.Ct. 948 (citing *Saladino v. I.L.G.W.U. Nat'l Retirement Fund*, 754 F.2d 473, 476 (2d Cir.1985)).

PLM argues that McBride lacks standing to sue under ERISA because the statute excludes from the definition of "participant" former employees who have received full distributions of their vested benefits. PLM also argues that McBride has no reasonable expectation of returning to covered employment, as the Plans themselves no longer exist.

The problem with PLM's arguments is the unusual context in which McBride's ERISA claim arose. McBride alleged that he was terminated in retaliation for his opposition to PLM's proposed termination of the ESOP and the 401–K Plan. The ERISA whistleblower provision makes it illegal to discharge an employee for exercising his rights under the benefit program or under ERISA. Section 1140 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions · of an employee benefit plan.... It shall be unlawful for any person to discharge, fine, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or .proceeding relating to this chapter.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. "This statute is clearly meant to protect whistleblowers." *Hashimoto v. Bank of Hawaii*, 999 F.2d 408, 411 (9th Cir.1993).

The district court in this case felt compelled by precedent to find that McBride lacked standing to sue under ERISA because he was not a participant at the time he filed suit. The district court was rightly concerned, however, that its holding would allow employers unfairly to escape liability for violations of ERISA. The very

actions taken by an employer that presumably violated ERISA might, the district court reasoned, simultaneously have the effect of depriving potential employees of standing to sue. In its written decision, the court expressed its apprehension:

> The Court is concerned that this could result in an injustice because an employer could wrongfully terminate an employee and wrongfully terminate a benefit plan, thereby depriving its former employee and former participant of standing to sue for the wrongdoing under ERISA, a law designed to protect employees.

It is true that in other distinguishable contexts, this court has asserted that standing for former employees is measured at the time of filing suit. *See, e.g., Harris,* 26 F.3d at 933; *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1422 (9th Cir.1991). However, none of these cases arose in the context of the whistleblower provisions of ERISA. This court left open the relationship between sections 1140 and 1132 of ERISA, noting that it was "a question we need not decide now." *Hashimoto,* 999 F.2d at 411.[1]

The concept of measuring ERISA standing at the time an action is filed is a judicially created requirement which is appropriate for most circumstances, but not for the situation we face in this case. Section 1140 forbids employers and other ERISA entities from interfering with certain protected rights and is enforceable through ERISA's civil enforcement mechanism in section 1132. Depriving a plaintiff of standing to sue under ERISA for his employer's clear violation of section 1140 would, in effect, make standing contingent upon the occurrence of subsequent events entirely within the control of the employer. "[I]t *would* seem more logical to say that

but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing." *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.1992) (citing *Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406, 1418 (9th Cir.1988)). Requiring that claimants like McBride be plan participants at the time of suit would create a race to the courthouse. Standing would depend upon which event occurred first: the plan's termination, or the claimant's filing of a lawsuit. In this case, McBride alleged that his discharge was caused by his criticism of PLM's proposed ESOP termination. Ironic it would be indeed to hold that the plan's termination itself then deprived McBride of standing to sue.

When an individual alleges, as here, that he was discharged in violation of ERISA's whistleblower provisions, his employer cannot be allowed to evade section 1140 accountability simply by terminating the plan and distributing the benefits. Nothing in *Firestone* commands such a result. *See id.* If an employee is a participant at the time of the alleged ERISA violation and alleges that he was discharged or discriminated against because of protected whistleblowing activities, we hold that such an employee has standing to sue under ERISA. To require that the claimant be a participant at the time of filing suit would undermine the very purpose of ERISA's whistleblower provision: to provide a federal remedy for discrimination against plan participants for exercising their protected rights under ERISA. These protected rights specifically include the right to request comments from the

---

1. Although the court in *Hashimoto* did not decide the question of whether section 1132 limited potential plaintiffs who could file suit under section 1140, the court did conclude that the plaintiff in that case was a fiduciary and therefore had standing to sue. The status of fiduciary was determined at the time of the alleged violation of ERISA's whistleblower provision, not at the time of filing suit. Hashimoto was no longer a fiduciary when she filed suit and yet she was "empowered to bring a civil action under § 1132 to enforce § 1140, ERISA's whistleblower provision." *Hashimoto,* 999 F.2d at 411.

Department of Labor on a proposed plan termination. *See* 29 U.S.C. §§ 1140, 1201.

We reject the argument that to deny participant status to McBride would not leave him without a remedy because ERISA empowers the Secretary of Labor to bring civil actions to redress violations of section 1140. *See* 29 U.S.C. § 1132(a)(5). To this argument, the Secretary persuasively responds in an amicus brief as follows:

> Nor is it sensible to expect the Secretary to bear the sole responsibility for enforcing Section 1140. The Department of Labor has limited resources and rarely litigates matters that directly involve only one person, as is often the case with Section 1140 violations. Private counsel are also better situated to provide full representation to employees who frequently allege, in addition to a Section 1140 violation, that an employer's actions violate other state and federal laws outside the Secretary's jurisdiction.

Brief for the Secretary of Labor Amicus Curiae at 10.

We hold that under section 1140, participant status must be adjudged at the time of the alleged ERISA violation. Standing under section 1140 does not depend upon whether the former employee seeks to or could obtain reinstatement to covered employment. The continued existence of a plan is not essential to the enforcement of the goals section 1140 was designed to address. *See Christopher*, 950 F.2d at 1221.

Our holding is consistent with the Congressional findings and declaration of policy of ERISA: "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, ... by providing for appropriate remedies, sanctions, and *ready access to the Federal courts.*" 29 U.S.C. § 1001(b) (emphasis added). This court should be guided by Congressional policy

and purpose. *See Crotty v. Cook*, 121 F.3d 541, 546–47 (9th Cir.1997) (holding that the policy and purpose behind ERISA dictated that a claimant did not lose standing to sue by accepting payment of vested benefits during litigation). Furthermore, the legislative history of ERISA indicates that "Congress viewed [the whistleblower provision] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted).

Because McBride was a "participant" in the ESOP at the time of his allegedly retaliatory discharge, he falls within the scope of protection afforded by the whistleblower provision of ERISA. Therefore, he has standing to sue PLM for lost wages and benefits, specifically the loss in value of his proportional share of the ESOP before conversion of the preferred stock. Consistent with his original prayer for relief, McBride also has standing to seek equitable relief to enjoin further violations of ERISA. This may include reinstatement to his former position at PLM and either reinstatement of the ESOP or reconversion of all common shares distributed back to their preferred stock value.

## B. ERISA Preemption of Fourth Cause of Action

Because the district court had subject matter jurisdiction to adjudicate McBride's claims, the court may indeed entertain the issue of ERISA preemption. *See Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir.1995) (holding that a plaintiff's standing to enforce ERISA is a prerequisite to both subject matter jurisdiction and ERISA preemption).

McBride's fourth cause of action alleges that PLM entered into a contractual relationship with owners of its preferred stock and breached the covenant of good faith and fair dealing. The contract terms were governed by the Certificate of Desig-

nations which enumerated the rights and conditions under Delaware state law attached to ownership of PLM preferred stock. The Certificate provided that preferred stock could only be held by a trustee of the ESOP or some other PLM benefit plan. Upon transfer, the preferred stock would be converted to common stock. McBride alleges that PLM terminated the ESOP and the 401–K plan to effect an automatic conversion of the preferred shares into common shares. He contends that this action constituted a breach of an implied covenant in the Certificate of Designations. The district court did not err at the outset when it dismissed the Fourth Cause of Action. The cause of action fell within ERISA's preemptive scope. The district court did err, however, in its final order granting summary judgment to PLM when it stated that, because it did not have jurisdiction over the matter, there could be no preemption under ERISA.

■ ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a); *Geweke Ford v. St. Joseph's Omni Preferred Care Inc.*, 130 F.3d 1355, 1358 (9th Cir.1997). "[A]lthough ERISA's express preemption is deliberately expansive, the preemption does not extend to state claims that affect employee benefit plans in too tenuous, remote, or peripheral a manner." *Ford*, 130 F.3d at 1358 (citations and internal quotation marks omitted). To determine whether an implied covenant of good faith and fair dealing contained in the Certificate is connected to an ERISA benefit plan, district courts weigh the following factors:

(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;

(2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;

(3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and

(4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir.1998) (quoting *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir.1993)).

The district court held that because McBride's Fourth Cause of Action relates to PLM's employee benefit plan, the cause of action is preempted. If the district court applied Delaware state law, the court would be directly regulating the types of benefits PLM's employees would receive. McBride argues the district court should have directed PLM to pay the redemption price for preferred shares of stock held by the ESOP trustee, rather than the conversion price at the common stock value. Because the court's action would have regulated the types and amount of benefits provided by the ESOP, ERISA preempts the state claim.

■ In addition, any regulation of an ERISA relationship, whether direct or indirect, is a sufficient basis for preemption. *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 416 (9th Cir.1990). "Even claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the administration of such plans whether directly or indirectly." *Id.* (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985)). The Certificate of Designations explicitly regulates the shares of stock under the ESOP and other PLM employee benefits plans. The Certificate was drafted in connection with the ESOP and its related documents. The purpose of the preferred shares as described in the Certificate of Designations was to fund the ESOP. Even McBride

acknowledges that the Fourth Cause of Action arose from a purported breach of the covenant of good faith and fair dealing between PLM and the owners of its preferred stock, the employees who were beneficiaries of the ESOP. The Certificate of Designations affects the relationships between the ERISA plan and the employer, as well as the employer and employee. The Certificate is clearly related to an ERISA plan. Therefore, McBride's claim is preempted by ERISA.

## C. Attorneys' Fees

 Both parties request attorneys' fees for this appeal. Pursuant to 29 U.S.C. § 1132(g)(1), in any action brought by an ERISA participant, the court has the discretion to grant a reasonable attorney's fee and costs of action to either party. *Schultz v. PLM Int'l, Inc.*, 127 F.3d 1139, 1142 (9th Cir.1997). We consider the following five factors in deciding whether to grant attorneys' fees:

(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980) (citations omitted). In this case, weighing the five factors, we conclude that each party should bear its own fees. *See Schultz,* 127 F.3d at 1143.

## CONCLUSION

When a claimant falls under ERISA's whistleblower provision, the overriding policy of ERISA mandates that a claimant's status as a plan participant must be measured at the time of the alleged ERISA violation and not at the time of filing suit. To hold otherwise would allow an employer's wrongful conduct to immunize it from federal liability. An employer cannot be allowed wrongfully to terminate an employee benefit plan and distribute plan benefits in lump sum before the claimant files suit, and thereby deprive the claimant of standing to sue for the wrongful conduct.

Further, the district court did not err by holding that McBride's state law claim for breach of the covenant of good faith and fair dealing was preempted by ERISA as the contract was clearly related to the ERISA plan.

With these changes, the petition for rehearing, and the petition for rehearing en banc, are DENIED.

The decision of the district court is REVERSED and REMANDED for disposition in accordance with this opinion.

BEEZER, Circuit Judge, Dissenting:

I am compelled to write separately. I address issues of standing and of stare decisis. First, the opinion of the court is unfaithful to Supreme Court precedent and to precedent of this Circuit. Second, it is clear that Circuit courts generally are inconsistent in deciding who is a "participant" under ERISA.

I

Kevin McBride ("McBride") appeals the district court's order granting summary judgment in favor of PLM International, Inc. ("PLM"), and dismissing McBride's complaint. McBride, a former employee of PLM, brought suit alleging that PLM's termination of his employment violated § 1140 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. McBride also brought various state law causes of action. The district court granted summary judgment in favor of PLM, holding that McBride lacked standing under ERISA because he was not a "participant" in an

ERISA plan at the time he filed suit. The district court dismissed the complaint for lack of subject matter jurisdiction and dismissed the pendent state law claims without prejudice to refiling in state court.

Reversing the district court, the opinion filed today holds that a plaintiff alleging discrimination or retaliatory discharge under 29 U.S.C. § 1140 is entitled to have his ERISA "participant" status, and thus his standing, fixed as of the date of injury. Neither the plain text of ERISA nor the settled law of the Supreme Court and this Circuit will support such a construction.

## II

PLM hired McBride in March 1988. Until April 1994 McBride consistently received favorable performance evaluations. During this period PLM gave bonuses to McBride and circulated three memoranda commending him for his work performance. PLM also gave McBride increased job responsibilities throughout this period. In early April 1994 Robert Tidball, PLM's president and chief executive officer, and Douglas Goodrich, McBride's supervisor and a PLM senior vice president, told McBride that he might be promoted to director of operations. PLM instead hired Jeff Alpert as director of operations. McBride was not promoted.

On April 7, 1994, McBride submitted a request for payment of commissions earned three years previously. On April 14 Goodrich and McBride met to discuss the requested payments. Goodrich stated that he did not believe that McBride was entitled to the commissions, but that he would authorize payment if PLM's legal department determined otherwise. McBride became angry and threatened to sue PLM if the commissions were not paid. Goodrich wrote a memorandum describing this meeting and had the memorandum placed in McBride's personnel file. Soon thereafter McBride apologized to Goodrich for his inappropriate behavior at the meeting. Goodrich informed McBride that further insubordination would result in McBride's termination. PLM paid McBride the requested commissions approximately a month after this incident.

Sometime later, Goodrich asked McBride to prepare two leasing reports ("the Leasing Reports"). McBride testified that he gave the Leasing Reports to Goodrich on July 26, 1994. Goodrich testified that McBride never gave him the reports.

On August 4, 1994, McBride met with Alpert, director of operations. At this meeting, McBride accused Alpert of inappropriately working on the personal affairs of another individual during business hours.

McBride was a participant in, and beneficiary of, the PLM Employers Profit Sharing and Tax Advantaged Savings Plan ("401–K Plan") and the PLM Employee Stock Ownership Plan ("ESOP") (collectively, "the Plans"). Both of the Plans qualified as ERISA employee benefit plans. See 29 U.S.C. § 1002(3). McBride was an active member of the Junior ESOP Committee ("the ESOP Committee"), an employee committee.

In spring 1994 PLM announced its intention to terminate the ESOP. Under the termination plan, each share of PLM preferred stock held by the ESOP would be exchanged for one share of PLM common stock. McBride considered this exchange unfair because the common stock was less valuable than the preferred stock. McBride first voiced his concerns about the termination plan in a meeting during early April 1994 with Goodrich and Tidball. At an employees' informational meeting called by PLM during the summer of 1994, McBride further expressed his opposition to the termination plan. During the meeting Tidball responded to McBride's comments with impatience and nonverbal hostility. Even though Tidball had opened the floor to employee questions, he cut off McBride's questions. McBride also voiced his concerns during weekly departmental

meetings led by Goodrich and in a meeting with Tidball.

On July 20, 1994, McBride and other members of the ESOP Committee signed and delivered a letter to the United States Department of Labor ("DOL") asking that the DOL make comments to the Internal Revenue Service about PLM's planned termination of the ESOP. McBride and other members of the ESOP Committee provided information to the DOL about the ESOP and the effect of its termination on PLM employees.

Tidball and Steven Peary, PLM's chief in-house counsel, were upset with the ESOP Committee's decision to send the letter to the DOL. Tidball and Peary offered to pay for outside counsel to review the propriety of the ESOP termination if the ESOP Committee would withdraw its letter to the DOL. McBride was alone among the ESOP Committee members in opposing this offer. The ESOP Committee withdrew the letter.

McBride was terminated on August 9, 1994, less than three weeks after the letter was sent to the DOL. Goodrich wrote McBride a termination letter stating that McBride was being terminated because of his "explosive, threatening and insubordinate behavior to two different supervisors" and because of his failure to produce the Leasing Reports. In November 1994 McBride began employment with Union Bank of California.

On January 17, 1995, PLM terminated the 401–K Plan; on January 18, 1995, PLM terminated the ESOP. By January 18, 1995, PLM had given all participants, including McBride, a lump sum distribution of their benefits under the Plans.

In August 1995 McBride filed suit in district court, alleging (1) violation of 29 U.S.C. § 1140 (ERISA's whistleblower section); (2) wrongful termination in violation of public policy; (3) defamation; and (4) breach of the covenant of good faith and fair dealing. The district court entered an order dismissing certain of McBride's claims. McBride filed a second amended complaint re-alleging the first three claims. PLM moved for summary judgment on each of those causes of action, and McBride moved for reconsideration of the order dismissing the fourth claim of his original complaint.

The district court granted PLM's summary judgment motion, in part. The district court held that McBride lacked standing to bring an action under ERISA because he was not a participant in an ERISA plan at the time he filed his complaint. The district court dismissed the complaint for lack of subject matter jurisdiction, vacated its prior order dismissing certain of McBride's claims and dismissed the complaint without prejudice to McBride's pursuing his state law claims in state court. McBride moved for reconsideration, which the district court denied. This timely appeal followed.

### III

We review de novo the existence of subject matter jurisdiction in the district court. *See Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir.1998). We also review de novo a district court's grant of summary judgment. *See Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998).

### IV

A claimant's standing to enforce ERISA under 29 U.S.C. § 1132 is a prerequisite to subject matter jurisdiction under ERISA. *See Curtis v. Nevada Bonding Corp.*, 53 F.3d 1023, 1027 (9th Cir.1995). Standing is a question of law which we review de novo. *See Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir.1993). The district court held that McBride lacked standing to bring a claim under ERISA because he was not, at the time of filing his complaint, a "participant," "beneficiary" or "fiduciary" within the meaning of 29 U.S.C. § 1132(a), ERISA's civil enforcement pro-

vision. I agree with the district court's analysis.

### A

McBride's complaint alleges a violation of 29 U.S.C. § 1140. That section provides, in relevant part, that

[i]t shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, [or] section 1201 of this title [authorizing "any employee or class of employee qualifying as an interested party" to request comments from the Secretary of Labor regarding a proposed plan termination].... It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. As the last sentence of this section directs, § 1140 may only be enforced through 29 U.S.C. § 1132, ERISA's civil enforcement mechanism. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *see also McKinnon v. Blue Cross and Blue Shield of Ala.,* 935 F.2d 1187, 1193–94 (11th Cir.1991) (§ 1140 may be enforced only by persons empowered to bring a cause of action under § 1132).

Because § 1140 is enforceable exclusively through § 1132, McBride has standing to bring this action only if he is a plan participant, beneficiary or fiduciary. *See* 29 U.S.C. § 1132(a); *Harris v. Provident Life and Accident Ins. Co.,* 26 F.3d 930, 933 (9th Cir.1994) ("[A] federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a 'participant, beneficiary, or fiduciary.'") (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

McBride contends that he has standing because he was a plan "participant" at the time of the alleged violation of § 1140. "The term 'participant' means any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court refined the definition of "participant," holding that

the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.... A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] "may become eligible."

*Id.* at 117–18, 109 S.Ct. 948 (quoting *Saladino v. I.L.G.W.U. Nat'l Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985); *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.1986) (per curiam)). At the time of his termination, McBride was "eligible to receive a benefit," 29 U.S.C. § 1002(7), under PLM's ERISA plans and was therefore a "participant." This fact, he claims, gives him standing to pursue this claim. McBride is mistaken.

It is the settled law of this Circuit that a person's standing as a plan participant "must be decided as of the time of the filing of the lawsuit." *Harris,* 26 F.3d at 933 (citing *Olson v. General Dynamics*

*Corp.,* 960 F.2d 1418, 1422 (9th Cir.1991); *Nishimoto v. Federman–Bachrach & Assocs.,* 903 F.2d 709, 714 (9th Cir.1990)); *see also Schultz v. PLM Int'l, Inc.,* 127 F.3d 1139, 1142 (9th Cir.1997) (participant status is determined at the time suit is filed); *Crotty v. Cook,* 121 F.3d 541, 547 (9th Cir.1997) (same); *Kuntz,* 785 F.2d at 1411 (same). At the time McBride filed suit, he was a former employee of PLM. He thus qualifies as a "plan participant only if he has 'a reasonable expectation of returning to covered employment or [has] a colorable claim to vested benefits.'" *Harris,* 26 F.3d at 933 (quoting *Firestone,* 489 U.S. at 117, 109 S.Ct. 948).

Because the Plans had been terminated before McBride's complaint was filed, he did not have a reasonable expectation of returning to covered employment. Nor did he have a colorable claim to vested benefits: McBride's benefits under the Plans had already been distributed to him in full. *Cf. Nishimoto,* 903 F.2d at 714 ("former employees whose vested benefits under a plan have already been distributed in a lump sum at the time they file suit are not 'participants' within the meaning of [29 U.S.C.] § 1002(7)"); *Kuntz,* 785 F.2d at 1411 (claimants who have received full extent of vested benefits under ERISA plan prior to filing suit lack standing as "participants"); *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536 (10th Cir.1993) (same). Because he had neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, McBride was not a participant in an ERISA plan at the time he filed suit. He therefore lacked standing to bring a claim under § 1132.

### V

From the bedrock analysis set out above, the opinion of the court has chiseled out a purely policy-based exception for plaintiffs alleging discrimination or retaliatory discharge under § 1140. This special class of favored plaintiffs will now be entitled to have their "participant" status de-

termined as of the time of the employer's alleged ERISA violation. The court's opinion essentially adopts the Fifth Circuit's "but for" approach to standing in the § 1140 context—"but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits...." *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.1992). Such an exception, we are told, will effectuate the broad remedial purposes of ERISA's whistleblower provision, 29 U.S.C. § 1140. The plain text of 29 U.S.C. § 1132(a), however, simply will not support the court's construction.

### A

As the Tenth Circuit incisively observed in the context of a § 1140 suit, the suggestion that "participant" status be judged at the time of an alleged ERISA violation "runs counter to the natural meaning of ERISA itself." *Raymond,* 983 F.2d at 1534. "The statute by its terms does not permit a civil action by someone who was [only] a participant at the time of the alleged ERISA violation. Rather, *it is written in the present tense, indicating that current participant status is the relevant test." Id.* at 1534–35 (citation omitted) (emphasis supplied); *see also Sallee v. Rexnord Corp.,* 985 F.2d 927, 929 (7th Cir.1993) (rejecting "but for" standing test in § 1140 context); *Sanson v. General Motors Corp.,* 966 F.2d 618, 621 (11th Cir. 1992) (en banc) (refusing to create a remedy for plaintiff failing to demonstrate "participant" status at time of filing suit in non-§ 1140 context); *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.,* 942 F.2d 1190, 1194 (7th Cir.1991) (holding, in non-§ 1140 context, that "[plaintiff] was not a plan participant at the time the action was filed and thus has no standing"); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 434–35 (4th Cir.1986) ("The effect of reading in a 'but for' test [in the non-§ 1140 context] is to impose participant status on every single employee who

but for some future contingency may become eligible. Neither caselaw nor other provision of ERISA supports such a reading of 'participant.' "); *but see Adamson v. Armco, Inc.,* 44 F.3d 650, 654–55 (8th Cir. 1995) (applying "but for" approach to standing in non-§ 1140 context); *Swinney v. General Motors Corp.,* 46 F.3d 512, 519 (6th Cir.1995) (adopting "but for" approach to standing in non-§ 1140 context); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 668 (2d Cir.1994) (same); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 702 (1st Cir.1994) (same); *Christopher,* 950 F.2d at 1221 (adopting "but for" test for standing in § 1140 context). Indeed, "there would be little need for the widely-invoked category of 'former employees' if participant status was based upon status at the time of the alleged ERISA violation." *Raymond,* 983 F.2d at 1535. This view is clearly reflected in Ninth Circuit decisions that construe the standing requirements of 29 U.S.C. § 1132(a). *See, e.g., Crotty,* 121 F.3d at 547 ("participant" status determined at time suit is filed); *Harris,* 26 F.3d at 933 (same); *Nishimoto,* 903 F.2d at 714 (same).

At base, the opinion filed today is sheer ipse dixit, for "[t]o say that but for an [employer's] conduct, plaintiffs would have standing is to admit that they lack standing and to allow those who merely claim to be participants to be deemed as such," *Raymond,* 983 F.2d at 1536. Such an exception directly challenges the Supreme Court's holding in *Firestone.* Analyzing the clear import of the word "participant" in 29 U.S.C. § 1002(7), the Court articulated a precise definition which allows only those former employees with a "reasonable expectation of returning to covered employment or ... a colorable claim to vested benefits" to be considered "participants." *Firestone,* 489 U.S. at 117, 109 S.Ct. 948. McBride satisfies neither of these conditions, a fact which should be dispositive. *See generally Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)

("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then ... [the] 'judicial inquiry is complete.' ") (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)).

The opinion filed today appears to recognize this textual obstacle, and invokes ERISA's broad remedial "policy and purpose" to justify its creation of a "but for" standing exception for § 1140 plaintiffs. The opinion deems a certain class of § 1140 claimants "participants," notwithstanding the fact that such claimants do not fit the settled definition of "participant" in ERISA. *Cf. Firestone,* 489 U.S. at 117–18, 109 S.Ct. 948. But this amounts to the very kind of analysis rejected by the Supreme Court in *Firestone:* "To say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." *Id.* at 117, 109 S.Ct. 948. Ultimately, whatever the wisdom of creating a new category of "participant" for the purpose of § 1140 suits, we lack authority to adopt such a scheme. A statutory revision is properly left to the informed judgment of the Legislative Branch.

The test for standing adopted in the court's opinion today recalls the "zone of interests" approach that we used in *Fentron Indus., Inc. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304–05 (9th Cir.1982). Under that approach, the question of a plaintiff's standing turned on whether his alleged injuries fell "within the zone of interests that Congress intended to protect when it enacted ERISA." *Id.* at 1305. However, as we recognized in *Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1265 (9th Cir.1992), *Fentron* 's "zone of interests" test was repudiated by *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 146, 105

S.Ct. 3085, 87 L.Ed.2d 96 (1984), and *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). If we are to remain faithful to an application of existing Ninth Circuit law in the ERISA standing context, we should be prepared to follow our holding in *Harris,* 26 F.3d at 933. There is simply no textually valid reason to alter the *Harris* analysis in the present case.

### B

The court's opinion expresses the fear that, without a "but for" standing exception, § 1140 violators will escape unpunished. Such a fear is wholly unfounded.[1] The language of § 1132 specifically contemplates the situation in which a victim of wrongdoing who lacks standing may still indirectly seek redress through the Secretary of Labor. ERISA empowers the Secretary of Labor to bring a civil action to remedy violations of § 1140. *See* 29 U.S.C. § 1132(a)(5); *McKinnon,* 935 F.2d at 1193–94. Because Congress chose to provide this means of redressing violations of § 1140, it is not for us to concoct an alternate remedy that better suits our sense of justice. *See Massachusetts Mut. Life Ins.,* 473 U.S. at 146, 105 S.Ct. 3085 ("The six carefully integrated civil enforcement provisions found in [§ 1132(a)] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.") (emphasis in original); *Franchise Tax Bd.,* 463 U.S. at 27, 103 S.Ct. 2841; *see generally Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("[A judge's] individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process

comes to an end."). Furthermore, because our precedents have consistently held that there can be no preemption of a plaintiff's state law causes of action in the absence of ERISA standing, McBride remains free to bring those claims in state court. *See, e.g., Curtis v. Nevada Bonding Corp.,* 53 F.3d 1023, 1027 (9th Cir.1995) ("[W]ithout standing to enforce ERISA, there can be no ERISA preemption."); *Harris,* 26 F.3d at 934 ("[I]t would be contradictory to rule that state law claims are preempted where the court has already held that the same plaintiffs may not assert a claim under ERISA because they are not 'participants' in the ERISA plan." (internal quotation marks omitted)).

### C

The court's opinion attempts to distinguish the unbroken line of our precedents requiring "participant" status to be determined at the time suit is filed by noting that none of these cases arose in the context of ERISA's whistleblower provision, 29 U.S.C. § 1140. The court has fashioned a special rule of standing in the § 1140 context to guarantee that former employees who bring suits for discrimination or retaliatory discharge under that section will always have standing. This approach, however, reverses the intended relationship between §§ 1132 and 1140.

As noted above, § 1140 instructs that "[t]he provisions of section 1132 shall be applicable in the enforcement of this provision." 29 U.S.C. § 1140. A person claiming a violation of § 1140 must therefore satisfy the requirements for standing under § 1132. *See Spinelli v. Gaughan,* 12 F.3d 853, 856 (9th Cir.1993) ("To enforce these rights [granted under § 1140], section [1140] incorporates the remedies of section [1132]...."). Nothing in § 1132 suggests that its standing requirements are modified by § 1140. Because the provisions of § 1132 apply to the enforcement

---

1. Overall, the argument that an employer would sacrifice an entire ERISA plan simply to prevent one employee from bringing suit

under ERISA—even where that same plaintiff maintains a host of wrongful termination remedies under state law—is most dubious.

of § 1140, and not vice versa, it follows that caselaw construing § 1132 applies in actions alleging violation of § 1140. Our § 1132 precedents requiring that "participant" status be determined at the time of filing suit, *see Schultz,* 127 F.3d at 1142; *Harris,* 26 F.3d at 933; *Kuntz,* 785 F.2d at 1411, therefore apply in actions alleging violations of § 1140 and must be given effect. *See generally Morgan v. United States,* 958 F.2d 950, 953 (9th Cir.1992) (panel is obligated to abide by prior Ninth Circuit decisions); *Aetna Life Ins. Co. v. Alla Med. Serv., Inc.,* 855 F.2d 1470, 1472–73 (9th Cir.1988) (panel must follow law of the Circuit absent overruling by Supreme Court or an en banc court); *Bowe v. Immigration & Naturalization Serv.,* 597 F.2d 1158, 1159 n. 1 (9th Cir.1979) (panel is obligated to follow prior holdings of the Ninth Circuit even if it considers them ill-advised). Under that long-settled standard established in this Circuit, McBride does not have standing.

## VI

Finally, the facts of this particular case do not, in any event, present compelling enough circumstances to create an exception from the standing requirements of § 1132(a). Here, the alleged ERISA violation occurred on August 9, 1994, when McBride was terminated. McBride voluntarily elected to take a 100% distribution of his share of assets under the ESOP in November 1994, which he received in December 1994. McBride received a full distribution of his assets under the 401–K Plan on January 18, 1995. Both the ESOP and the 401–K Plan were terminated by January 18, 1995.

Although McBride filed his complaint in August 1995, it was well within his power to have filed at an earlier date to avoid losing his standing as a plan "participant." For example, McBride could have filed suit at any time before January 18, 1995 (some five months after the alleged ERISA violation). This would have preserved his standing as a plan "participant" because he was entitled to benefits until that date.

## VII

A person has standing to bring an ERISA claim only if he or she is a participant, a beneficiary or a fiduciary of an ERISA plan. *See Harris,* 26 F.3d at 933. Participant status is determined as of the time suit is filed. *See id.* A former employee who has received a distribution of all benefits owed by an ERISA plan is not a participant. *See Kuntz,* 785 F.2d at 1411.

Because McBride had received a distribution of all of his ERISA benefits before the filing of this action and could not return to covered employment, he clearly lacked standing under ERISA. The court's opinion warps the plain statutory language of ERISA and dishonors the long line of our precedent holding that "participant" status is to be measured at the time of filing suit. Whatever the wisdom or utility of grafting a standing exception onto § 1132(a), it is for Congress, not for us, to make that decision. *See generally Hill,* 437 U.S. at 195, 98 S.Ct. 2279 ("[I]n our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches.")

I respectfully dissent.